Nicholas HITE, Appellant–Plaintiff,

v.

VANDERBURGH COUNTY OFFICE
OF FAMILY AND CHILDREN,
Appellee–Defendant.

No. 82A05–0509–JV–541.

Court of Appeals of Indiana.

April 11, 2006.

Julie A. Fox, Evansville, for Appellant.

Katharine Vanost Jones, Evansville, for Appellee.

**OPINION**

SHARPNACK, Judge.

Nicholas Hite ("Father") appeals the trial court's termination of his parental rights. Father raises two issues, which we revise and restate as whether the trial court's order terminating Father's parental rights is clearly erroneous because Father did not receive notice of the CHINS petition. We affirm.

The relevant facts follow. In 1997, when Tosha Brooks ("Mother") was fifteen years old, she met Father after he had been released from jail. During the few months when Mother and Father were dating, Father and Mother engaged in an argument that resulted in a fight in which Father picked Mother up by her throat. By September 1997, Father was incarcerated again. P.B. was born to Father and Mother on March 4, 1998.[1]

---

1. Father argues, without citation to the record, that paternity had been established prior to the CHINS petition. The VCOFC argues that Hite never established paternity. We cannot determine from the record whether Father established paternity.

Father was released from the Department of Correction on September 13, 1999, but was arrested again on November 22, 1999. Father was then convicted of attempted theft as a class D felony and sexual misconduct with a minor as a class B felony. Father was sentenced to serve two years on the attempted theft conviction and fifteen years on the sexual misconduct conviction. Father's expected release date is December 12, 2007.

On June 5, 2002, a child protective services investigator was called to Mother's home.[2] The child protective services investigator arrived at the home and observed that P.B. did not have any clothes on and was "very dirty." Transcript at 35. The investigator observed trash all over the floor, dirty dishes piled in the sink, and "old food" strewn throughout the home, including cheese slices on a coffee table, and "ketchup that was everywhere." *Id.* at 36. The investigator also noted that a window was missing in the children's bedroom through which the children could have easily climbed out, that the bed in the children's bedroom was broken, and that a vent was missing leaving a four-by-ten-inch hole in the floor in an area to which the children had access. Given the conditions of the home, the Vanderburgh County Office of Family and Children ("VCOFC") took P.B. and Mother's other children into protective custody and placed P.B. with his maternal grandparents.

The VCOFC filed a request for authority to file a verified petition alleging that P.B. was a CHINS and attached a written intake report. The trial court found probable cause to believe that P.B. was a CHINS. The VCOFC then filed a petition alleging that P.B. was a child in need of services, which stated, in part:

> That said child, [P.B.], is a Child in Need of Services as defined by I.C. 31–9–2–17 and 31–34–1–1 et. seq., in that the child's physical or mental condition is seriously endangered as a result of the neglect of the child's parents to supply the child with necessary food, clothing, shelter and supervision; to wit: due to an ongoing history of inadequate parenting, inadequate supervision, unsuitable living conditions, and suspected drug/alcohol abuse of said child's parents, said child needs care, treatment or rehabilitation that the child is not receiving or that is unlikely to be provided or accepted without the coercive intervention of the court.

Appellee's Appendix at 1.

On July 10, 2002, Mother submitted the matter to the juvenile court based upon stipulated facts, and the trial court found that P.B. was a child in need of services. Father did not receive notice of the CHINS petition.

On October 22, 2003, the VCOFC filed a petition to involuntarily terminate parental rights but continued to seek reuninfication of P.B. and Mother. Melody Fordeck, the family case manager with the VCOFC, sent notice to Father regarding the VCOFC's petition to terminate his parental rights. On April 7, 2004, the goal changed to termination rather than reunification. On April 28, 2004, Mother agreed to terminate her parental rights and allow P.B. to be adopted.

On September 15, 2004, Father appeared in person and by counsel for a CHINS review hearing and an initial hearing on termination and denied the allega-

---

2. At this time, Mother was also living with John Rowlett and their two children, A.R. and C.R. Rowlett's parental rights were terminated, and he challenged the termination of his parental rights in a separate appeal. *See Rowlett v. Vanderburgh County Office of Family & Children,* 841 N.E.2d 615 (Ind.Ct.App. 2006), *trans. pending.*

tions of the petition to terminate. On January 25, 2005, Father and counsel appeared for a pretrial hearing on the termination case, and he again denied the allegations of the petition. On March 16, 2005, Father's counsel appeared at a permanency review hearing for the CHINS case.

On April 12, 2005, the trial court held a termination hearing. Father was present and represented by counsel. The trial court granted the petition to terminate Father's parental rights and entered the following findings of fact and conclusions thereon:

This matter having come before the Court upon the Petition for Termination of Parental Rights filed herein and the Court having heard the evidence and being duly advised in the premises and having had matter under advisement, now Finds:

1. The Court has jurisdiction over the parties and the subject matter in this case.

2. The [VCOFC] appeared by its caseworker, Melody Fordeck, and by counsel, Katharine Vanost Jones;

3. The mother, Tosha Brooks, having previously appeared with her counsel, Michael Hayden, and after having been duly advised of her rights and having acknowledged her understanding of same, did voluntarily relinquish her parental rights;

4. The Father, Nicholas Delano Hite, appeared in person and by his counsel, Emil Becker;

5. The Court Appointed Special Advocate appeared in person.

6. A hearing was held at which witnesses were sworn and evidence heard;

7. The Court now finds by clear and convincing evidence that the allegations of the petition are true in that:

a. The child has been removed from his parents for at least six (6) months pursuant to a dispositional decree;

b. There is a reasonable probability that the condition that resulted in the child's removal and/or the reasons for the placement outside the parent's home will not be remedied;

c. The continuation of the parent-child relationship poses a threat to the well-being of the child; and that it is in the best interest for the safety and welfare of the child that the parental rights be terminated;

d. The County Office of Family and Children has a satisfactory plan for the care and treatment of the child.

Appellant's Appendix at 14–15.

The sole issue is whether the trial court's order terminating Father's parental rights is clearly erroneous because Father did not receive notice of the CHINS petition. Father argues that because he did not receive notice of the CHINS hearing: (A) the trial court never had subject matter jurisdiction; and (B) that his due process rights were violated. We will address each argument separately.

A. *Jurisdiction*

 Father argues that the trial court never acquired subject matter jurisdiction because it excluded him from "all proceedings." Appellant's Brief at 7. Specifically, Father appears to argue that the trial court did not acquire subject matter jurisdiction because he did not receive notice of the CHINS petition and that no

evidence supported the finding that P.B. was a CHINS.

Jurisdiction is of three types: subject matter jurisdiction, personal jurisdiction and jurisdiction of the case. *Pivarnik v. Northern Indiana Public Service Co.,* 636 N.E.2d 131, 137 (Ind.1994). Subject matter jurisdiction refers only to the power of a court to hear and decide a particular class of cases. *Id.* The only relevant inquiry in determining whether a court has subject matter jurisdiction is whether the kind of claim advanced by the petitioner falls within the general scope of authority conferred upon such court by the constitution or by statute. *Id.*

*In re K.B.,* 793 N.E.2d 1191, 1198 n. 6 (Ind.Ct.App.2003).[3]

In order to properly address Father's claim involving jurisdictional prerequisites, we must review the statutory procedure for the filing of CHINS petitions. *See K.B.,* 793 N.E.2d at 1196. Ind.Code § 31–30–1–1(2) provides that "A juvenile court has exclusive jurisdiction ... in [p]roceedings in which a child, including a child of divorced parents, is alleged to be a child in need of services under IC 31–34."

A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

Ind.Code § 31–34–1–1.

█ The origination of a CHINS action is governed by Ind.Code § 31–34–7–1, which provides:

A person may give an intake officer written information indicating that a child is a child in need of services. If the intake officer has reason to believe that the child is a child in need of services, the intake officer shall make a preliminary inquiry to determine whether the interests of the child require further action.

After the preliminary inquiry, "[t]he intake officer shall send to the prosecuting attorney or the attorney for the county office of family and children a copy of the preliminary inquiry" and "shall recommend whether to: (1) file a petition; (2) informally adjust the case; (3) refer the child to another agency; or (4) dismiss the case." Ind.Code § 31–34–7–2 (2004). "The person representing the interests of the state and receiving the preliminary inquiry and recommendations shall decide whether to request authorization to file a petition. This decision is final only as to the office of the person making the decision." Ind.Code § 31–34–7–3 (2004). The juvenile court shall "[a]uthorize the filing of a petition if the court finds probable cause to believe that the child is a child in need of services." Ind.Code § 31–34–9–2 (2004). A juvenile court does not acquire jurisdic-

**3.** Father does not challenge personal jurisdiction or jurisdiction of the case. We note that a trial court does not acquire personal jurisdiction over a party if service of process is inadequate. *Munster v. Groce,* 829 N.E.2d 52, 57 (Ind.Ct.App.2005). "A defendant can waive the lack of personal jurisdiction and submit himself to the jurisdiction of the court if he responds or appears and does not contest the lack of jurisdiction." *Hill v. Ramey,* 744 N.E.2d 509, 512 n. 7 (Ind.Ct.App.2001).

tion over a particular juvenile case where these jurisdictional prerequisites are completely ignored. *In re Lemond,* 274 Ind. 505, 533, 413 N.E.2d 228, 245 (Ind.1980).

Father relies on *In re Heaton,* 503 N.E.2d 410 (Ind.Ct.App.1986), to support his argument that the trial court never had subject matter jurisdiction. In *Heaton,* a CHINS petition was never filed, and the parents were not notified of the proceedings until well after a CHINS finding and a child support order had been entered. *Heaton,* 503 N.E.2d at 414. We held that the juvenile court lacked subject matter jurisdiction because statutory jurisdictional prerequisites had not been met. *Id.*

Here, unlike in *Heaton,* the VCOFC filed a request for authority to file a verified petition alleging that P.B. was a CHINS and included a written intake report. The trial court found probable cause to believe that P.B. was a CHINS. The VCOFC then filed a petition alleging that P.B. was a child in need of services. The petition stated that the juvenile court had jurisdiction pursuant to Ind.Code § 31–30–1–1(2), which provides, "A juvenile court has exclusive original jurisdiction ... in ... [p]roceedings in which a child, including a child of divorced parents, is alleged to be a child in need of services under IC 31–34." At this point, the juvenile court had exclusive original jurisdiction. *K.B.,* 793 N.E.2d at 1198. Even though Father did not receive notice of the initial CHINS hearing, Mother was present and submitted the matter to the juvenile court based upon stipulated facts. Upon admission, Ind.Code § 31–34–10–8 requires the juvenile court to "[e]nter judgment accordingly" and to "[s]chedule a dispositional hearing." Because the VCOFC followed the statutory procedures when filing the CHINS petition, and Mother was present and admitted the allegations, we conclude that the juvenile court had subject matter jurisdiction. *See, e.g., K.B.,* 793 N.E.2d at 1198 (distinguishing *Heaton* and holding that the trial court had subject matter jurisdiction where the Office of Family and Children requested a CHINS petition and the trial court found probable cause to issue the petition).

## B. *Due Process*

■ Father does not challenge the trial court's findings in support of termination under Ind.Code § 31–35–2–4. Rather, Father argues that his due process rights were violated by his lack of notice of the CHINS proceeding. Father appears to argue that procedural irregularities in the CHINS proceedings deprived him of procedural due process rights in the termination proceedings. The VCOFC argues that Father waived any argument that he was deprived of due process rights in the CHINS case.

■ It is well established that we may consider a party's constitutional claim waived when it is raised for the first time on appeal. *McBride v. Monroe County Office of Family & Children,* 798 N.E.2d 185, 194 (Ind.Ct.App.2003). Our review of the record reveals that Father never objected to the termination because he lacked notice of the CHINS proceeding. Thus, Father's argument regarding the effect of the CHINS proceeding on his due process rights is waived on appeal.[4] *See, e.g., In re S.P.H.,* 806 N.E.2d 874, 877–878 (Ind.Ct.App.2004) (holding that the father

4. Father also argues that the Mother's submission of the matter on record at the initial hearing cannot support the finding that P.B. was a child in need of services. Father did not raise this argument at the termination hearing and has waived this argument on appeal. *See, e.g., McBride,* 798 N.E.2d at 195 n. 4 (holding that the mother should have raised her claim during the termination proceedings).

waived his argument that his due process rights were violated during the involuntary termination proceeding); *McBride*, 798 N.E.2d at 195 n. 4 (holding that "[t]o preserve her constitutional claim for appeal, McBride could and should have raised her due process argument during the termination proceedings"); *In re K.S.*, 750 N.E.2d 832, 834 n. 1 (Ind.Ct.App.2001) (holding that the mother's alleged violations of her due process rights because of the trial court's non-compliance with statutory requirements governing pre-termination proceedings was waived because a party may not raise an issue for the first time on appeal).

■ Waiver notwithstanding, we will address the merits of Father's argument that he was deprived of due process. The Fourteenth Amendment to the United States Constitution provides that "no person shall be deprived of life, liberty, or property without due process of law." U.S. CONST. amend. XIV. We have repeatedly noted that the right to raise one's children is more basic, essential, and precious than property rights and is protected by the Due Process Clause. *In re M.M.*, 733 N.E.2d 6, 10 (Ind.Ct.App.2000). "Although due process has never been precisely defined, the phrase expresses the requirement of 'fundamental fairness.'" *Id.* (citing *E.P. v. Marion County Office of Family & Children*, 653 N.E.2d 1026, 1031 (Ind.Ct.App.1995)).

■ When the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of the due process clause. *J.T. v. Marion County Office of Family & Children*, 740 N.E.2d 1261, 1264 (Ind.Ct.App. 2000), *reh'g denied, trans. denied, abrogated on other grounds by Baker v. Marion County Office of Family & Children*, 810 N.E.2d 1035 (Ind.2004). We have held that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Thompson v. Clark County Div. of Family & Children*, 791 N.E.2d 792, 795 (Ind.Ct.App.2003) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)), *trans. denied.* Due process in parental rights cases involves the balancing of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing government interest supporting use of the challenged procedure. *A.P. v. Porter County Office of Family & Children*, 734 N.E.2d 1107, 1112 (Ind.Ct. App.2000), *reh'g denied, trans. denied.*

Here, Father's private interest is substantial inasmuch as his parental rights have been terminated. The United States Supreme Court recognized that "a parent's interest in the care, custody, and control of his children, is 'perhaps the oldest of the fundamental liberty interests.'" *J.T.*, 740 N.E.2d at 1264 (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000)). The government's countervailing interest is also substantial. The State of Indiana has a compelling interest in protecting the welfare of the children. *In the Matter of E.M.*, 581 N.E.2d 948, 952 (Ind.Ct.App.1991), *trans. denied.*

Turning to the factor regarding the risk of error, Father appears to argue that procedural irregularities in the CHINS proceedings deprived him of procedural due process rights in the termination proceedings. Specifically, Father appears to argue that the VCOFC failed to provide him with notice of the CHINS action and case plans, which resulted in a violation of his due process rights.

Father relies on our holding in *A.P.* that "procedural irregularities in a CHINS proceedings may be of such import that they

deprive a parent of procedural due process with respect to the termination of his or her parental rights." *A.P.,* 734 N.E.2d at 1113.

In *A.P.,* we reasoned that the CHINS and involuntary termination statutes are not independent of each other, and in fact, Ind.Code § 31–35–2–2 clearly states that an involuntary termination proceeding is "governed by the procedures prescribed by" the CHINS statutes contained in Indiana Code Article 31–34. *Id.* at 1112. However, we also found that although the CHINS statutes govern termination proceedings, Ind.Code § 31–35–2–2 clearly states that termination proceedings are distinct from CHINS proceedings. *Id.* Moreover, we stated that:

> [The Indiana Supreme Court] has concluded that CHINS proceedings are "distinct from" involuntary termination proceedings in that a CHINS cause of action is separate from and does not necessarily lead to a termination cause of action. *State ex rel. Gosnell v. Cass Cir. Court,* 577 N.E.2d 957, 958 (Ind. 1991). Moreover, a CHINS intervention in no way challenges the general competency of a parent to continue a relationship with his or her child, and a termination proceeding is thus of "much greater magnitude as to the rights of the parties involved." *Id.* Also, an involuntary termination of parental rights can occur only after a child has been removed from his or her parent for six months under a CHINS (or juvenile delinquency) dispositional decree, or after a court has made an express determination that reasonable efforts for family preservation or reunification are not required pursuant to Indiana Code Section 31–34–21–5.6, or after the child has been removed from his or her parent for at least fifteen of the most recent twenty-two months. I.C. § 31–35–2–4.

*Id.*

■■■■ Therefore, although termination proceedings and CHINS proceedings have an interlocking statutory scheme because involuntary termination proceedings are governed by the CHINS statutory procedures, CHINS proceedings are separate and distinct from involuntary termination proceedings because a CHINS cause of action does not necessarily lead to an involuntary termination cause of action. *In re T.F.,* 743 N.E.2d 766, 771 (Ind.Ct. App.2001), *trans. denied.* However, in order for an involuntary termination determination to be made, it is necessary that the statutory CHINS procedures have been properly followed. *Id.* Thus, in *A.P.* we held that:

> Those three alternative prerequisites to involuntary parental rights termination can only be met through compliance with the CHINS or juvenile delinquency statutes . . . . It would be incongruous to hold that a county, with the assistance of a juvenile court, may commence CHINS proceedings for a child and remove a child from his or her home, yet disregard various portions of the CHINS and termination statutes on *several occasions* and still terminate parental rights following the passage of time after a CHINS dispositional decree and a child's removal from the home.

*A.P.,* 734 N.E.2d at 1112–1113 (emphasis added).

In *A.P.,* we considered "a record replete with procedural irregularities throughout the CHINS and termination proceedings that [were] plain, numerous, and substantial." *Id.* at 1118. In sum, we analyzed seven substantial irregularities that, when taken together, required reversal of the trial court's termination decision as a viola-

tion of due process.[5] *Id.* at 1117. However-er, of those seven irregularities, we noted that none of the deficiencies, standing alone, would have resulted in a due process violation. *Id.* at 1118.

Here, Father only alleges that he failed to receive notice of the original CHINS action and copies of case plans.[6] Father does not argue that his due process rights were violated due to irregularities in the termination proceeding. Father's argument relates only to the initial part of the CHINS proceedings. In *A.P.*, we held that the failure to provide the parents with

---

5. We identified the following irregularities:

"(1) the [Porter County Office of Family and Children] admittedly failed to provide [Mother] and [Father] with copies of at least some, and possibly all, of A.P.'s case plans as required by Indiana Code Chapter 31–34–15; (2) the termination petition filed in this cause did not comport with the requirements of Indiana Code Section 31–35–2–4; (3) the original underlying CHINS petition filed with respect to A.P. was unsigned and unverified in violation of Indiana Code Section 31–34–9–3; (4) no permanency hearing was ever held as required by Indiana Code Section 31–34–21–7; (5) the original CHINS dispositional order, the modification of that order providing for A.P.'s out-of-home placement, and every other order entered by the trial court, with the exception of the termination judgment, contained no written findings and conclusions upon the record concerning its reasons for those dispositions as required by Indiana Code Section 31–34–19–10; (6) the trial court entered a no-contact order against [Father] without following the statutory prerequisites for entry of such an order as contained in Indiana Code Chapter 31–34–17; and (7) [Father] was deprived, on at least two occasions, of his right to be present at review hearings in A.P.'s CHINS case in violation of Indiana Code Section 31–34–21–4(b)."

*A.P.*, 734 N.E.2d at 1117.

6. The VCOFC argues that the trial court did not abuse its discretion when it did not send notice to Father of the initial hearing. Service in an initial hearing on a CHINS petition is governed by Ind.Code § 31–34–10–2, which provides:

(a) The juvenile court shall hold an initial hearing on each petition.
(b) The juvenile court shall set a time for the initial hearing. A summons shall be issued for the following:
(1) The child.

(2) The child's parent, guardian, custodian, guardian ad litem, or court appointed special advocate.
(3) Any other person necessary for the proceedings.
(c) A copy of the petition must accompany each summons. The clerk shall issue the summons under Rule 4 of the Indiana Rules of Trial Procedure.

The VCOFC argues that Father is not a "parent, guardian or custodian" and is not a party necessary for reunification. Appellee's Brief at 9. The VCOFC also relies on *In re S.P.H.*, 806 N.E.2d 874 (Ind.Ct.App.2004), for its argument that the statute is disjunctive and only requires a parent or guardian or custodian to be served with a summons. In *S.P.H.*, the appellant alleged that the Division of Family and Children failed to negotiate with him prior to filing case plans. We stated that "[s]pecifically, Ind.Code § 31–34–15–1 provides that, 'a case plan is required for each child in need of services who is under the supervision of the county,' while I.C. § 31–34–15–2 provides that '[t]he county office of family and children, after negotiating with the child's parent, guardian, or custodian, shall complete a child's case plan ...'" *S.P.H.*, 806 N.E.2d at 878–879. We held that "[i]nitially, we are mindful that the statute is not all-inclusive. The statutory language merely requires the county officer of family and children to negotiate with the parent, or the guardian, or the child's custodian." *Id.* at 879. A different result was reached in *In re C.C.*, 788 N.E.2d 847 (Ind.Ct.App.2003), in which we addressed a putative father's rights in a parental termination and noted that "It is unclear whether, for purposes of notice, the [office of family and children] considered [putative father] as a 'parent' or 'any other party' to the CHINS proceeding; regardless, he was entitled to notice under [Ind.Code § 31–35–2–6.5]." *C.C.*, 788 N.E.2d at 851 n. 1. We need not address the VCOFC's argument because the termination of Father's rights meets the requirements of due process.

"with copies of A.P.'s case plans could have substantially increased the risk of error with respect to the termination of parental rights, in that [the parents] may have been deprived of some degree of notice as to what conduct on their part could lead to the termination of those rights." *A.P.*, 734 N.E.2d at 1114.

We find *A.P.* distinguishable. Here, unlike in *A.P.*, Mother was present and submitted the matter to the juvenile court based upon stipulated facts. Upon admission, Ind.Code § 31–34–10–8 requires the juvenile court to "[e]nter judgment accordingly" and to "[s]chedule a dispositional hearing." Further, Father's expected release date is December 12, 2007, and he could not participate in the VCOFC's services due to his incarceration.

Moreover, the record reveals that Father did participate in the CHINS proceeding. On September 15, 2004, Father appeared in person and by counsel for a CHINS review hearing. On March 16, 2005, Father's counsel appeared at a permanency review hearing. On April 12, 2005, Father and counsel were present at the termination hearing.

We conclude that the risk of error is not substantial because Father was not denied the opportunity to be heard in the latter portions of the CHINS action and in the termination proceedings. We cannot say that the failure to provide Father with notice during the initial stages of the CHINS action substantially increased the risk of error in the termination proceedings. Father was incarcerated at that time and was not deprived of notice as to what conduct on his part could lead to termination of his parental rights. Upon balancing the three factors enunciated in *A.P.*, we conclude that the trial court did not deny Father due process. *See, e.g., In re T.W.*, 831 N.E.2d 1242, 1247 (Ind.Ct. App.2005) (holding that the mother was not denied her due process rights because she was not denied the opportunity to be heard); *In re C.C.*, 788 N.E.2d 847, 856 (Ind.Ct.App.2003) (holding that the father's procedural due process rights were not violated because the father was represented at the final hearing date by counsel, had previously testified on his own behalf, and did not have a constitutional right to be present at the termination hearing), *trans. denied; Hallberg v. Hendricks County Office of Family & Children*, 662 N.E.2d 639, 645 (Ind.Ct.App.1996) (holding that failure of the trial court to serve the father with summons or copy of CHINS petition did not deny father his right to due process or opportunity to be heard); *cf. Thompson v. Clark County Div. of Family & Children*, 791 N.E.2d 792, 793, 796 (Ind.Ct.App.2003) (holding that the mother was not given the opportunity to be heard in a meaningful manner when the trial court conducted a hearing "as a summary proceeding where no witnesses testify and no cross-examination is conducted").

For the foregoing reasons, we affirm the trial court's involuntary termination of Father's parental rights.

Affirmed.

RILEY, J. and BARNES, J. concur.