**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 27 2012, 8:40 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**KARRIE K. MCCLUNG**
DCS, Miami County Office

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF L.L., (CHINS), K.R.S. (Mother), | ) | |
| | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 52A05-1107-JC-382 |
| | ) | |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) | |
| | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE MIAMI CIRCUIT COURT
The Honorable Rick A. Maughmer, Special Judge
Cause No. 52C01-1011-JC-77

**January 27, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Judge**

## STATEMENT OF THE CASE

K.R.S. ("Mother") appeals the juvenile court's determination that her daughter, L.L., was a child in need of services ("CHINS").

We affirm.

## ISSUE

Whether the juvenile court denied Mother procedural due process during the CHINS proceeding.

## FACTS

L.L., born in November 2000, has autism, which is a "spectrum disorder" in which there is a "wide range of developmental . . . functioning." (Tr. 112). L.L. is on the "low end" of the spectrum and "requires a very high level of care and supervision." (Tr. 113).

DCS had been involved in CHINS proceedings with L.L. and Mother during 2009-2010. During that proceeding, DCS removed L.L. from Mother's home in Miami County and placed her at Damar in Indianapolis. L.L. was ultimately discharged from Damar on March 5, 2010 and returned to Mother's care. Upon her discharge from Damar, L.L., who had been incontinent and wore diapers when admitted to Damar, was toilet trained and able to wear underwear.

In the Fall of 2010, DCS received reports regarding L.L.'s lack of personal hygiene at school as well as an escalation of her symptoms associated with autism and an overall deterioration of her behavior. DCS contacted Mother regarding the reports and, in the course of the investigation, discovered that there were also some issues with Mother properly administering medication. On October 5, 2010, DCS received a report

that L.L. went to school with feces in her hair. DCS ultimately removed L.L. from Mother's home and again placed her at Damar.

On November 4, 2010, DCS filed with the Miami County juvenile court a request for authorization to file a petition alleging that L.L. was a CHINS.[1] That same day, the juvenile court granted DCS's request, DCS filed a petition alleging that L.L. was a CHINS, and the juvenile court held an emergency initial hearing,[2] at which Mother appeared and was represented by counsel.

On February 3, 2011, the juvenile court held a fact-finding hearing, at which Mother appeared and was represented by counsel. On February 14, 2011, the juvenile court issued an order finding L.L. to be a CHINS and setting the dispositional hearing for March 7, 2011.

On March 7, 2011, counsel for DCS filed a motion to reset the dispositional hearing. In the motion, counsel stated that he was ill and that "[c]ounsel for [M]other was notified and did not oppose." (DCS's App. at 3). That same day, the juvenile court granted the motion and reset the hearing for May 26, 2011.

The juvenile court held the dispositional hearing on May 26. Mother was present at this hearing and represented by counsel. During the hearing, the court appointed special advocate testified and recommended that L.L. be returned to Mother's care.

---

[1] DCS also initiated CHINS proceedings for L.L.'s eleven-year-old brother, M.L. M.L.'s CHINS determination is not part of this appeal.

[2] Immediately after this emergency initial hearing, the juvenile court judge, Judge Robert A. Spahr, recused himself from this matter, and Judge Richard A. Maughmer of Cass County assumed jurisdiction as a special judge on November 17, 2010.

Chanda Johnson, an autism specialist with Damar, testified that when L.L. was readmitted to Damar, she had "regressed across all levels of functioning." (Tr. 106). She testified that L.L. had regressed in her personal hygiene skills, was in diapers again, and had elevated levels of maladaptive behaviors, including physical and verbal aggression and self injury. Johnson also testified that Mother had been receiving autism education classes from Damar and had been regularly visiting L.L. Additionally, Johnson testified that L.L. needs a specialized level of care, such as in a group home.

Thereafter, the juvenile court issued its dispositional order, in which it ordered that L.L. remain a CHINS ward with continued placement at Damar until DCS was able to locate a group home closer to Mother's residence in Miami County. The juvenile court also ordered Mother to, among other things, continue in autism education classes in order to gain an understanding of L.L's needs.

## DECISION

Mother does not challenge the sufficiency of the evidence used to support the CHINS determination but contends that the determination should be reversed because her due process rights were violated during the CHINS proceeding when the juvenile court failed to follow certain statutory procedures.

"The Due Process Clause of the United States Constitution prohibits state action that deprives a person of life, liberty or property without a fair proceeding." *Lawson v. Marion Cnty. Office of Family & Children*, 835 N.E.2d 577, 579 (Ind. Ct. App. 2005). "Although due process has never been precisely defined, the phrase expresses the requirement of 'fundamental fairness.'" *Id.* (quoting In re *M.M.*, 733 N.E.2d 6, 10 (Ind.

4

Ct. App. 2000)). Due process requires notice, an opportunity to be heard, and an opportunity to confront witnesses. *In re M.L.K.*, 751 N.E.2d 293, 295–96 (Ind. Ct. App. 2001).

1. Dispositional Hearing

Mother first argues that the juvenile court denied her procedural due process because it did not hold the dispositional hearing within the statutorily prescribed time limit. Indiana Code section 31-34-19-1 provides that a "juvenile court shall complete a dispositional hearing not more than thirty (30) days after the date the court finds that a child is a child in need of services[.]" (Emphasis added). Mother contends that her due process rights were violated when the dispositional hearing was held more than thirty days after the juvenile court determined that L.L. was a CHINS.

"It is well established that we may consider a party's constitutional claim waived when it is raised for the first time on appeal." *Hite v. Vanderburgh Cnty. Office of Family & Children*, 845 N.E.2d 175, 180 (Ind. Ct. App. 2006) (citing *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 194 (Ind. Ct. App. 2003)). Here, our review of the record reveals that Mother never raised an objection before the juvenile court regarding the timing of the dispositional hearing.[3] Thus, Mother's argument that her due process rights were violated by the timing of the dispositional hearing is waived. *See, e.g.*, *McBride*, 798 N.E.2d at 194-95 (holding that the mother had waived her

---

[3] During the dispositional hearing, Mother's counsel merely commented that the dispositional hearing should have been held within thirty days of the CHINS determination, but Mother did not otherwise object to the timing of the dispositional hearing or move to dismiss the CHINS determination based on the timing of the hearing.

5

constitutional challenge to alleged deficiencies in the CHINS proceedings by failing to object during the CHINS proceedings or argue them in termination proceeding).

Waiver notwithstanding, Mother's due process rights were not violated by the delay in the dispositional hearing. In *Parmeter v. Cass Cnty. Dep't of Child Servs.*, 878 N.E.2d 444, 448 (Ind. Ct. App. 2007), *reh'g denied*, our court held that the term "shall" in the dispositional hearing statute, Indiana Code section 31-34-19-1, was "directory" and "not mandatory." We explained that:

> A statute containing the term "shall" generally connotes a mandatory as opposed to a discretionary import. However, "shall" may be construed as directory instead of mandatory "to prevent the defeat of the legislative intent." Thus, the term "shall" is directory when the statute fails to specify adverse consequences, the provision does not go to the essence of the statutory purpose, and a mandatory construction would thwart the legislative purpose.

*Parmeter*, 878 N.E.2d at 448 (internal citations omitted). Because the dispositional hearing statute does not contain any specific consequence for the failure to comply with the thirty-day time limit, we concluded that the "shall" as used in that statute was merely directory. *Id.* We further explained that

> holding the hearings within the statutory time limits does not go to the purpose of the CHINS statutes, which were enacted in part to "assist[ ] parents to fulfill their parental obligations" and to "remove children from families only when it is the child's best interest . . . ." Ind. Code § 31–10–2–1(4), (6). And a mandatory construction would thwart those legislative purposes by requiring dismissal of CHINS cases where continuances of the fact-finding or dispositional hearings are needed for legitimate reasons, such as the unavailability of parties or witnesses or the congestion of the court calendar, merely because one party is being a stalwart.

*Id.*

Here, the juvenile court held a fact-finding hearing in February 2011 and thereafter determined that L.L. was a CHINS. It is clear that the May 2011 dispositional hearing was held outside the thirty-day time limit set forth in the dispositional hearing statute. *See* I.C. § 31-34-19-1. Further, it is not disputed that the juvenile court initially set the matter for disposition in March 2011; however, counsel for DCS became ill, notified Mother's counsel of such, and requested a continuance without objection from Mother's counsel. Mother did not object to the delay of the dispositional hearing and has not shown how this delay deprived her of an opportunity to participate in the dispositional hearing or how she was otherwise prejudiced. Accordingly, we conclude Mother's due process rights were not violated by the timing of the dispositional hearing. *See, e.g.*, *Parmeter*, 878 N.E.2d at 448.

2. Disposition Decree

Mother also argues that the juvenile court denied her procedural due process because the findings and conclusions in the dispositional decree were not sufficiently specific. Indiana Code section 31-34-19-10, which addresses findings and conclusions in a dispositional decree, provides:

> (a) The juvenile court shall accompany the court's dispositional decree with written findings and conclusions upon the record concerning the following:
>
>> (1) The needs of the child for care, treatment, rehabilitation, or placement.
>>
>> (2) The need for participation by the parent, guardian, or custodian in the plan of care for the child.
>>
>> (3) Efforts made, if the child is a child in need of services, to:

7

(A) prevent the child's removal from; or

(B) reunite the child with; the child's parent, guardian, or custodian in accordance with federal law.

(4) Family services that were offered and provided to:

(A) a child in need of services; or

(B) the child's parent, guardian, or custodian; in accordance with federal law.

(5) The court's reasons for the disposition.

(b) The juvenile court may incorporate a finding or conclusion from a predispositional report as a written finding or conclusion upon the record in the court's dispositional decree.

Mother argues that her due process rights were violated because the juvenile court's dispositional order failed to include a specific reference to subsection (a)(3), the efforts made to prevent L.L.'s removal or to reunite L.L. with Mother, as well as to subsection (a)(4), the family services offered to L.L. or to Mother.

Here, the juvenile court expressly incorporated DCS's predispositional report into its dispositional order, which it is permitted to do under Indiana Code section 31-34-19-10(b). Our review of DCS's ten-page predispositional report and three-page attachment reveals that it contains family history, background, and consultation with professionals, efforts made by DCS prior to L.L.'s removal, and services and treatment options for Mother. Additionally, it is clear that the juvenile court did not make a wholesale adoption of DCS's report and recommendations. For example, the juvenile court also made some specific recommendations of its own, such as transitioning L.L. to a group

8

home closer to Mother's residence so that Mother could participate more in L.L.'s care in an effort to eventually reunify L.L. with Mother.

After review of the record before us, we conclude that the juvenile court's dispositional order as a whole meets the statutory requirements of Indiana Code section 31-34-19-10 and that there is no due process violation. *See, e.g.*, *McBride*, 798 N.E.2d at 196 (finding that juvenile court's order incorporating predispositional report complied, as a whole, with dispositional order statute).

Affirmed.

BAKER, J., and BAILEY, J., concur.