## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 08 2015, 9:57 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Bryan Lee Ciyou
Lori B. Schmeltzer
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Vicki L. Fortino
Hocker & Associates, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

C.R.,

*Appellant-Defendant,*

v.

V.R.,

*Appellee-Plaintiff*

April 8, 2015

Court of Appeals Case No.
21A01-1407-DR-315

Appeal from the Fayette Superior
Court
The Honorable Ronald T. Urdal,
Judge
Cause No. 21D01-0906-DR-444

## Friedlander, Judge.

C.R. (Father) appeals from the trial court's order modifying child custody. On appeal, Father presents the following issues:

1.  Did the trial court violate Father's due process rights by holding a hearing in his absence?

2. Did the trial court abuse its discretion in modifying custody?

[2] We affirm.

[3] Father and V.R. (Mother) were married and had two sons together, X.R., who was born in 2008, and L.R., who was born in 2009 (collectively, the Children). Mother and Father's marriage was dissolved in November 2009 and Mother was awarded custody of the Children, with Father receiving parenting time. In February 2012, custody of the Children was transferred to Father based on the trial court's finding that Mother had withheld the Children from Father and intentionally thwarted his efforts to see them by moving to Kentucky and establishing her sister as the Children's legal guardian. Mother was awarded parenting time in accordance with the Indiana Parenting Time Guidelines.

[4] In January 2014, Mother filed a petition to modify custody, in which she alleged, among other things, that Father had not allowed her to exercise parenting time and that Father had not provided Mother with the Children's medical information. A hearing was scheduled for May 29, 2014. Two days before the hearing, Father filed a motion for a continuance. Although his attorney appeared on his behalf, Father failed to appear for the May 29 hearing, at which his motion for a continuance was denied. Evidence was then presented in Father's absence. Specifically, Mother testified without objection from Father's counsel. At the conclusion of her direct examination, Father's counsel declined to cross-examine Mother, asserting that he was unable to do so without Father's presence. Father's counsel then asked the trial court to

reconsider his motion to continue. At that time, the trial court stated that it was taking the matter under advisement and told Father's counsel that it would consider further hearing if counsel was able to establish that Father had a good reason for being absent.

[5] Later that day, Father called the trial court's offices and indicated to trial court staff that he was not aware that he was required to be in court that day. Court staff advised Father to contact his attorney. After receiving a letter from Father's attorney, the trial court set the matter for a second hearing on June 13, 2014.[1] Shortly thereafter, Mother filed an objection to the new hearing.

[6] At the beginning of the June 13 hearing, the trial court stated it had been informed that Father had been told by his attorney's secretary that he was not required to appear for the May 29 hearing because a motion for continuance had been filed. The trial court stated that it had spoken to the secretary and accepted her statement, and it was going to give Father the opportunity to present evidence. At that time, Mother's counsel stated that the trial court had adjourned the May 29 hearing without allowing her to present all of her evidence, and the trial court agreed to allow her to continue her presentation. Mother also asked the trial court whether it would include the evidence presented at the May 29 hearing, and the trial court, without objection from Father, responded affirmatively. Thereafter, both Mother and Father presented

---

[1] Father has not included a copy of this letter in his Appellant's Appendix.

their evidence and the trial court took the matter under advisement. On July 26, 2014, the trial court issued its order modifying custody of the Children to Mother, finding specifically that "the children's relationship with their mother has been harmed as the result of the actions of the father and his girlfriend and that it is in the bests interests of the children that they are in the custody of their mother." *Appellant's Appendix* at 16. Father now appeals. Additional facts will be provided where necessary.

## 1.

Father first argues that the trial court violated his due process rights by holding the May 29 hearing in his absence. Father's argument in this regard has been waived. Father was represented by counsel at the May 29 hearing, and Father's counsel did not object to Mother's presentation of evidence on that date. Moreover, Father did not object to Mother's request at the June 13 hearing that the trial court incorporate the evidence from the May 29 hearing. At no point during either hearing did Father argue that a due process violation had occurred. Father may not raise this argument for the first time on appeal. *See Hite v. Vanderburgh Cnty. Office of Family & Children*, 845 N.E.2d 175 (Ind. Ct. App. 2006) (explaining that constitutional claims, including due process claims, may be waived when raised for the first time on appeal).

Waiver notwithstanding, Father has fallen far short of establishing a due process violation. The Due Process clause of the Fourteenth Amendment of the United States Constitution "requires notice, an opportunity to be heard, and

an opportunity to confront witnesses." *Morton v. Ivacic*, 898 N.E.2d 1196, 1199 (Ind. 2008). Father makes no argument that he did not receive notice of the May 29 hearing or that he was denied an opportunity to be heard. Instead, he argues only that he was denied an opportunity to cross-examine witnesses at the May 29 hearing. Father's claim is without merit. Although Father was not present at the May 29 hearing, he was represented by an attorney. *See United Farm Bureau Mut. Ins. Co. v. Groen*, 486 N.E.2d 571, 573 (Ind. Ct. App. 1985) (explaining that an "attorney is the agent of the party employing him, and in court stands in his stead"), *trans. denied*. Father's attorney had the opportunity to cross-examine Mother on that date, but declined to do so.

[9] To the extent Father argues that his personal appearance was required, we note that Father had the opportunity to be present to cross-examine Mother, but he did not seize it due to his failure to appear. Although Father's failure to appear might be attributable to misinformation he received from his attorney's secretary, it was certainly not attributable to the trial court. In any event, any harm Father suffered due to his failure to appear at the May 29 hearing was cured at the June 13 hearing, when Father was again extended the opportunity to cross-examine Mother, and this time seized it. No due process violation occurred in this case.

## 2.

[10] Next, Father argues that the trial court abused its discretion in modifying custody. It is well established that we review custody modifications for abuse of

discretion, granting particular deference and latitude to our trial courts in family law matters. *See Werner v. Werner*, 946 N.E.2d 1233 (Ind. Ct. App. 2011), *trans. denied*. In reviewing a judgment issued with special findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), we first determine whether the evidence supports the findings and then consider whether the findings support the judgment. *Id.* We will reverse only if the judgment is clearly erroneous. *Id.* That is, we will reverse if our examination of the record leaves us with the firm conviction that a mistake has been made. *Id.* In making this determination, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. *Id.* We will not reweigh the evidence or assess the credibility of the witnesses. *Id.*

[11] Pursuant to Ind. Code Ann. § 31-17-2-21(a) (West, Westlaw current with all legislation of the 2015 First Regular Session of the 119th General Assembly effective through February 23, 2015), a trial court may not modify custody unless the modification is in the best interests of the child and there is a substantial change in one or more of the factors the court may consider in making an initial custody award, as set forth in I.C. § 31-17-2-8 (West, Westlaw current with all legislation of the 2015 First Regular Session of the 119th General Assembly effective through February 23, 2015). I.C. § 31-17-2-8 provides that the court "shall consider all relevant factors," including specifically the following:

> (1) The age and sex of the child.
> (2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

    (A) the child's parent or parents;

    (B) the child's sibling; and

    (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

    (A) home;

    (B) school; and

    (C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

In reaching its decision to modify custody, the trial court entered the following relevant findings and conclusions:

3. In an Order of this Court dated February 8, 2012, primary physical custody of the minor children was transferred to Father with Mother to have parenting time according to the Indiana Parenting Time Guidelines ("IPTG").
4. Since that order Father has prevented Mother from exercising her parenting time on a regular basis.
5. Since that order Father has not communicated with her regarding education as fully as required in I.C. 20-33-7-2 or the health information as required by I.C. 16-39-1-7 and there has been too little exchange of information as required by the IPTG.
6. Father's girlfriend is referred to as the children's "mom" in most school communications and [Mother] is referred to as the "bio mom." This relationship is interfering with and possibly replacing the child[ren]'s primary relationship with their mother.

7. There have been three unsubstantiated reports of abuse and neglect to the Indiana Department of Child services against the home of [Mother]. [Mother's] home has been found to be appropriate for the children and Mother, her boyfriend . . . and his son . . . have all been found not to be abusive or neglectful of [X.R.] and [L.R.].

8. Mother does not use drugs or drink alcohol. She is currently pregnant but is otherwise healthy and is not taking any medications or seeing any physician or mental health provider.

9. Father does not allow Mother to provide shoes or clothing for the boys to use in his home and the minor child [X.R.] was forbidden to use the glasses that Mother had gotten prescribed for him.

10. Mother is employed and she has appropriate plans in place for the minor children for the hours when she is at work. She currently has no other children but is currently pregnant.

11. [Mother's boyfriend] also lives in [M]other's home with his 8 year old son . . . who has Asperger's Syndrome and although occasionally the boys all fight, Mother and [her boyfriend] have a plan in place to keep the boys from fighting.

12. Mother believes she is the appropriate parent to have full custody of her children and that if she does she will make sure that Father has his appropriate Parenting Time.

*Appellant's Appendix* at 14-15. After considering the evidence presented, the trial court found that there had been a substantial change in one of the statutory factors, namely, the interaction and interrelationship of the Children with their parent or parents. Specifically, the court found that "the [C]hildren's relationship with their mother has been harmed as the result of the actions of the [F]ather and his girlfriend[.]" *Id.* at 16. The trial court went on to find that a change in custody was in the Children's best interests.

[13] On appeal, Father first argues that the trial court's finding that Father and his girlfriend have harmed the relationship between Mother and the Children is unsupported by the record because there was no evidence presented concerning

Mother's relationship with the Children prior to the February 2012 custody order. Thus, according to Father, no change in that relationship has been demonstrated. We disagree. Mother testified that since the change in custody in February 2012, her relationship with the boys had changed for the worse. Specifically, she stated that the boys seem confused about who their mother is. Mother testified that the Children usually call her by her first name and they refer to Father's girlfriend as mom. This evidence supports the trial court's finding that Mother's relationship with the Children has deteriorated since the change in custody.

[14] The trial court's finding that the deterioration of the Children's relationship with Mother was caused by Father and his girlfriend is likewise supported by the evidence.[2] Mother testified that after Father was awarded custody in February 2012, she did not see the Children much at first. She testified that she lived two hours away from the Children and did not have a car, and Father was very controlling with respect to parenting time. Despite being awarded parenting time in accordance with the Indiana Parenting Time Guidelines, Mother stated that during that time, she "didn't get much telephone time" and

---

[2] Father argues that any problems in Mother's relationship with the Children are due to her own parenting deficiencies. He goes on to list a number of these perceived deficiencies, many of which are based on events that occurred prior to the last change in custody, and some of which are not supported by the evidence most favorable to the judgment. In any event, Father's arguments in this regard are nothing more than requests to reweigh the evidence and reach a conclusion opposite that of the trial court, which we will not do. *See Dixon v. Dixon*, 982 N.E.2d 24, 26 (Ind. Ct. App. 2013) (explaining that this court will not substitute our judgment for that of the trial court on a petition to modify custody "if any evidence or legitimate inferences support the trial court's judgment").

that she was seeing the Children "maybe once a month" and that "sometimes [she] was only allowed to go up there and spend a couple hours and then come back." *Transcript of May 29 Hearing* a 10. She testified further that Father regularly withheld her parenting time, causing her to miss birthdays, holidays, and school activities, and that it took a letter from her attorney to prevent Father from withholding parenting time on Christmas. She also testified that she had stopped trying to talk to the Children on the telephone when they are with Father because every time she called, she is unable to have a conversation with them because they are on speaker phone and there is a television blaring in the background or the Children are watching Father play video games.

[15] Father admitted that he is hesitant to allow Mother to exercise her court-ordered parenting time when he feels the situation in her home is bad for the Children. He also admitted that he has attempted to unilaterally place conditions on Mother's ability to exercise parenting time due to "negativity" he believed the Children were bringing home from their weekend visits from Mother. *Exhibit Volume*, Respondent's Exhibit F. Specifically, Father told Mother that if she wanted to see the Children, visitation would occur in Wabash, where he lives, instead of Mother's home in Plainfield. There was also extensive evidence presented concerning representations Father and his girlfriend have made to X.R.'s school regarding the Children's relationship with Mother. Father's girlfriend was listed as X.R.'s mother on some school forms, and on a student information sheet, Father's girlfriend was listed as the mother, with the explanation that she was "Dad's girlfriend" who X.R. "refers to as

mom". *Id.*, Petitioner's Exhibit 1. In an email to X.R.'s teacher, Father's girlfriend stated that X.R. did not have regular contact with Mother. The teacher forwarded the email to the school principal, who responded that Father had led her to believe that Mother had no custody or visitation. As a result of these communications, school officials became concerned that Mother would show up at the school unannounced and decided to practice an "intruder drill" as a precaution. *Id.* In another email to X.R.'s teacher, Father's girlfriend stated that Father had decided to suspend Mother's parenting time due to concerns about physical and sexual abuse in her home. A DCS investigation was conducted, and no abuse was substantiated. All of this evidence supports the trial court's conclusion that Father and his girlfriend have worked together in an attempt to interfere with the Children's relationship with Mother.

[16] Father next takes issue with the trial court's finding that Father has not shared school and health information with Mother as required by statute and the Indiana Parenting Time Guidelines (the Guidelines). Specifically, he argues that it was Mother's burden to obtain such information on her own, and the trial court accordingly placed an impermissible burden on him. Father is correct that neither of the statutes referenced by the trial court placed a duty on Father to share education or health information with Mother. *See* Ind. Code Ann. § 16-39-1-7 (West, Westlaw current with all legislation of the 2015 First Regular Session of the 119th General Assembly effective through February 23, 2015) (providing that custodial and noncustodial parents have equal access to their child's health records); Ind. Code Ann. § 20-33-7-2 (West, Westlaw

current with all legislation of the 2015 First Regular Session of the 119th General Assembly effective through February 23, 2015) (providing that schools must allow custodial and noncustodial parents the same access to their child's education records). As we will explain further below, however, the Guidelines do require Father to share information with Mother. Accordingly, we find the trial court's erroneous citation of I.C. §§ 16-39-1-7 and 20-33-7-2 as additional sources of that obligation to be superfluous and harmless.

[17] The Guidelines provide that

> Parents should obtain and share information about their children. Parents should take the initiative to obtain information about their child from the various providers of services. Each parent is responsible to establish a relationship with the child's school, health care provider and other service provider. A child may suffer inconvenience, embarrassment, and physical or emotional harm when parents fail to actively obtain and share information.

Ind. Parenting Time Guidelines, Section 1(D). Thus, while Father is correct that the Guidelines require each parent to establish a relationship with their child's school and health care providers, they also require parents to obtain and share information about their children. With respect to school records and school activities, the Guidelines further provide as follows:

> **1. School Records.** Under Indiana law, both parents are entitled to direct access to their child's school records, Indiana Code § 20-33-7-2. Each parent should obtain school information on their own without depending on the other parent. A parent shall not interfere with the right of the other parent to communicate directly with school personnel concerning a child. The noncustodial parent shall be listed as an emergency contact unless there are special circumstances concerning child endangerment.

**2. School Activities.** Each parent shall promptly notify the other parent of all information about school activities, which is not accessible to the other parent. A parent shall not interfere with the right of the other parent to communicate directly with school personnel concerning a child's school activities. The parent exercising parenting time shall be responsible to transport the child to school related activities.

*Id.* The commentary to this section requires that "[e]ach parent with knowledge of the child's event should promptly inform the other parent of the date, time, place, and event."

[18] Although the Guidelines require each parent to establish his or her own relationship with the child's school and obtain school information independently, Father fails to acknowledge that he did not timely inform Mother of the schools in which he had enrolled the Children. Mother testified that she was not informed of where X.R. was going to school until after school had already started. She testified further that Father had simply told her that L.R. was going to preschool, but he did not tell her where. It is unclear to us how Mother could be expected to establish a relationship with the schools and obtain information on her own when Father did not share even this basic information.

[19] Moreover, once Mother learned where X.R. went to school, she emailed his kindergarten teacher and arranged and attended a conference. At the conference, Mother learned that the school was under the impression that Mother was not involved with the Children. Thereafter, she received only general information from the school, and she has missed all school functions

because she was not informed about them either by Father or the school. According to Mother, the school eventually stopped communicating with her altogether. It is reasonable to infer that the school's refusal to communicate with Mother was attributable to the efforts of Father and his girlfriend to create the impression that Mother had no custody or visitation rights and was at best an absent parent. The Guidelines provide that that parents shall not interfere with each other's rights to communicate directly with the school. In light of all these facts, the trial court's finding that Father has not satisfied the requirements of the Guidelines with respect to the communication of educational information was not clearly erroneous.

[20] With respect to health information, the Guidelines provide that "[i]f a child is undergoing evaluation or treatment, the custodial parent shall communicate that fact to the non-custodial parent." Ind. Parenting Time G., Section 1(D)(4)(a). The commentary to this subsection defines "evaluation or treatment" to include "medical, dental, educational, and mental health services." Father plainly violated this requirement. The evidence presented at the hearings establishes that Father regularly sent X.R. to a therapist for months without informing Mother.[3] Thus, the trial court's conclusion that Father had not satisfied the Guidelines' requirements concerning the communication of health information was not clearly erroneous.

---

[3] In its order transferring custody to Mother, the trial court ordered that X.R. was no longer to be seen by this therapist, "[e]ffective immediately." *Appellant's Appendix* at 17.

Father next argues that the trial court abused its discretion by considering only one of the best-interests factors set forth in I.C. § 31-17-2-8, i.e., the interaction and interrelationship of the Children with Mother. Father ignores, however, that the trial court set forth all of the statutory factors and specifically noted that it had considered them. That the trial court found one of the factors to tip the scales in the best-interests analysis does not render its ultimate finding an abuse of discretion.

Father's remaining arguments with respect to the best interests of the Children are nothing more than requests to reweigh the evidence and substitute our judgment for that of the trial court, which we will not do on appeal. As set forth above, the trial court's finding that Father and his girlfriend have harmed the Children's relationship with Mother and attempted to replace her in the maternal role is supported by the evidence. These findings support the trial court's ultimate findings that there has been a substantial change in circumstances and that modification was in the best interests of the Children. Accordingly, we cannot conclude that the trial court abused its discretion in modifying custody.

Judgment affirmed.

Baker, J., and Najam, J., concur.