## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 19 2015, 9:53 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Mark Small
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of, | May 19, 2015 |
| J.H. (minor child), | Court of Appeals Cause No. 49A02-1409-JT-613 |
| and, | Appeal from the Marion Superior Court |
| K.T. (father), | Cause No. 49D09-1402-JT-91 |
| Appellant-Respondent | The Honorable Marilyn Moores, Judge; The Honorable Larry Bradley, Magistrate |
| v. | |
| The Indiana Department of Child Services, | |

Appellee-Petitioner.

**Barnes, Judge.**

# Case Summary

K.T. ("Father") appeals the termination of his parent-child relationship with J.H. We affirm.

# Issue

Father raises one issue, which we restate as whether he was denied due process in the termination proceeding because of the alleged lack of notice in the underlying child in need of services ("CHINS") proceeding.

# Facts

J.H. was born in November 2009. Father saw J.H. just once in March 2011. At some point, Father lived in California. In December 2012, J.H. was alleged to be a CHINS, and Father was named as her alleged father with an unknown address in California. The CHINS petition alleged that J.H.'s mother failed to provide J.H. and her brother with a safe and sanitary living environment with appropriate supervision. The petition also alleged that Father had not successfully demonstrated the ability and willingness to appropriately parent J.H.

[4] In April 2013, a default judgment was entered against Father in the CHINS proceeding after the trial court found that the Department of Child Services ("DCS") made diligent efforts to locate Father, that DCS published service by notification three times in February 2013, that Father had not responded to the publication, that he had not appeared before the court in the matter, that he had not contacted DCS, that he had not demonstrated an ability or willingness to parent J.H., that he had not participated in services, and that he was unavailable and unable to parent J.H.

[5] In February 2014, the trial court approved DCS's request to change the plan for J.H. from reunification to adoption. The trial court found that Father had not appeared in court or visited J.H. and that DCS did not know where Father was.

[6] On February 20, 2014, DCS filed a petition to terminate Father's parental rights. DCS then located Father in California and, on March 17, 2014, a summons was sent to him at a detention facility in San Diego. On April 4, 2014, Father acknowledged receipt of the summons. Father did not appear at an April 15, 2014 hearing, but the trial court acknowledged his request for counsel and appointed counsel to represent him. Father participated at an April 25, 2014 hearing by telephone. On July 2, 2014, a termination hearing was held. Father's attorney was present at the hearing, and Father participated by

phone.  On August 6, 2014, the trial court issued an ordering terminating Father's parental rights.[1]  Father now appeals.

## Analysis

Father challenges the termination of his parental rights on the basis that he was not properly notified of the CHINS proceeding.  Although Father uses the terms subject matter jurisdiction, personal jurisdiction, and due process in his brief, the focus of his argument appears to be the purported denial of procedural due process, and we will review it as such.[2]

Father did not object to the alleged lack of notice of the CHINS proceeding during the termination proceeding and raises the issue for the first time on appeal.  "It is well established that we may consider a party's constitutional claim waived when it is raised for the first time on appeal." *Hite v. Vanderburgh Cnty. Office of Family & Children*, 845 N.E.2d 175, 180 (Ind. Ct. App. 2006).  Thus, this issue is waived.  *See id.* at 180-81.

Waiver notwithstanding, when the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process.  *Id.* at 181.  "Due process in parental rights cases involves the balancing

---

[1]  Paternity of J.H. was confirmed after the July 2014 hearing was conducted.

[2]  Because Father does not provide us with cogent argument regarding why the trial court lacked subject matter over the CHINS proceeding, this issue is waived.  *See* Ind. App. R. 46(A)(8)(a).  Further, many of the authorities discussing personal jurisdiction that Father relies on relate to a party's minimum contacts with Indiana.  Father does not make a cogent argument that he did not have the necessary minimum contacts with Indiana, and this issue is waived.  *See id.*

of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing government interest supporting use of the challenged procedure." *Id.*

[10]     There is no doubt that Father's private interest in his parental relationship with J.H. is substantial. *See id*. Likewise, the government's countervailing interest in protecting the welfare of children is also substantial. *Id.* Thus, our focus is on the risk of error.

[11]     Father does not challenge the trial court's findings following the termination hearing or dispute that he was notified of and participated in the termination proceedings while represented by counsel. Thus, the issue is whether the alleged lack of notice of the CHINS proceeding deprived him of due process in the termination proceeding.

[12]     Regarding notice of the CHINS proceeding, the limited record on this issue shows that Father testified he had received an email from DCS in April or May 2012 before the CHINS proceeding was initiated in December 2012. It is not clear where Father was living when the CHINS petition was filed, but his testimony indicated that he was released from incarceration in California in January 2013 and reincarcerated in August 2013. A DCS caseworker testified that, although Father could not be located in December 2012, she continued to look for Father during the course of the CHINS proceeding. She stated that she filed an affidavit of diligent inquiry detailing her efforts to locate Father. The caseworker testified that she tried contacting J.H.'s mother to locate Father and

she searched the white pages, the department of correction system, and the Marion County Jail system. She indicated her belief that they had searched for Father in California but were not able to locate him until after February 20, 2014, when he was located in the San Diego County Jail. At that point, Father indicated he did not want to start services until paternity had been established, which did not occur until after the July 2014 hearing. In addition to DCS's efforts to locate Father during the pendency of the CHINS proceeding, the CHINS order of default shows that Father was served by publication in March 2013.

[13] Father claims that DCS did not establish that it diligently searched for him during the CHINS proceeding or appoint an attorney to represent him in that proceeding. Father, however, does not specify what additional notice DCS was legally required to provide to him as J.H.'s alleged Father whose whereabouts were unknown or cite any authority suggesting that the trial court was required to appoint an attorney to represent him in these circumstances. Moreover, Father makes no argument that J.H. was not actually a CHINS.

[14] We have held that the failure to receive notice during the initial stages of a CHINS action and copies of the case plan did not create a substantial risk of error because the parent was not denied the opportunity to be heard in the latter portions of the CHINS action and in the termination proceedings. *See Hite*, 845 N.E.2d at 184; *but cf. A.P. v. Porter Cnty. Office of Family & Children*, 734 N.E.2d 1107, 1118 (Ind. Ct. App. 2000) (acknowledging that where "a record is replete with procedural irregularities throughout CHINS and termination proceedings

that are plain, numerous, and substantial, we are compelled to reverse a termination judgment on procedural due process grounds."), *trans. denied*. In *Hite*, we recognized:

> although termination proceedings and CHINS proceedings have an interlocking statutory scheme because involuntary termination proceedings are governed by the CHINS statutory procedures, CHINS proceedings are separate and distinct from involuntary termination proceedings because a CHINS cause of action does not necessarily lead to an involuntary termination cause of action.

[15] *Id*. at 182. More recently our supreme court has stated:

> While we acknowledge a certain implication of parental fault in many CHINS adjudications, the truth of the matter is that a CHINS adjudication is simply that—a determination that a child is in need of services. Standing alone, a CHINS adjudication does not establish culpability on the part of a particular parent.

[16] *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010).

[17] Here, where DCS attempted to locate Father throughout the CHINS proceeding and served him with notice of the CHINS proceeding by publication, there was not a substantial risk of error in the termination proceeding in which Father participated and was represented by counsel. Father has not shown that he was denied due process.

## Conclusion

[18] Father waived his procedural due process claim by not raising it during the termination proceeding. Waiver notwithstanding, he has not established he was denied due process under these facts. We affirm.

Affirmed.

Riley, J., and Bailey, J., concur.