915 N.E.2d 145 (2009)
In the Matter of the Involuntary Termination of the Parent-Child Relationship of H.L., Minor Child, and Her Father, A.Z.
A.Z., Appellant-Respondent,
v.
Marion County Office, Indiana Department of Child Services, Appellee-Petitioner, and
Child Advocates, Inc., Appellee-Guardian Ad Litem.
No. 49A05-0902-JV-73.
Court of Appeals of Indiana.
August 4, 2009.
Publication Ordered October 1, 2009.
*146 Chris P. Frazier, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.
Elizabeth A. Gamboa, Franklin, IN, Attorney for Appellee, Indiana Department of Child Services.

OPINION
BAILEY, Judge.

Case Summary
Appellant-Respondent A.Z. ("Father") appeals an order terminating his parental rights to H.L., upon the petition of the Appellee-Petitioner Marion County Department of Child Services ("the DCS"). We affirm.

Issues
Father presents two issues for appeal:
I. Whether he was denied due process; and
II. Whether the DCS established, by clear and convincing evidence, that termination of the parental relationship is in the best interests of H.L.

Facts and Procedural History
On June 30, 2006, A.L. ("Mother") gave birth to H.L. Father had been incarcerated *147 since before H.L.'s birth, and H.L. remained in the sole custody of Mother for the first eleven months of her life.
On June 5, 2007, DCS caseworker Courtney McGee visited H.L. at St. Vincent Children's Hospital in Indianapolis, where H.L. was being treated for pneumonia. H.L. had also been diagnosed as suffering from cystic fibrosis. McGee recommended to the DCS that a Child in Need of Services ("CHINS") petition be filed because H.L. had experienced multiple hospitalizations for "failure to thrive" and Mother did not respond to H.L.'s cries or interact with H.L. "unless prompted." (Ex. pg.11).
On June 11, 2007, the DCS filed a petition alleging that H.L. was a CHINS because her parents were unable or unwilling to provide for her care. The juvenile court found H.L. to be a CHINS and ordered Father to establish his legal paternity of H.L. He did so after a DNA test confirmed his biological paternity. Father was also ordered to participate in a family profile and bonding assessment and to complete a drug and alcohol assessment. Mother subsequently agreed to the termination of her parental rights.[1]
Father remained incarcerated in county jails on multiple charges, and was unavailable to complete basic parenting services or prepare to meet H.L.'s extraordinary medical needs. On August 27, 2008, the DCS petitioned to terminate Father's parental rights. On December 22, 2008, the juvenile court conducted an evidentiary hearing. The parental relationship between Father and H.L. was terminated on January 12, 2009. Father now appeals.

Discussion and Decision

I. Due Process
Father contends that he was denied due process because he was not afforded the opportunity to be heard at the termination hearing and because he was not provided services in order to "develop a relationship with his child." Appellant's Brief at 1.
When the State seeks the termination of a parent-child relationship, it must do so in a manner that meets the requirements of the Due Process Clause. Hite v. Vanderburgh County Office of Family and Children, 845 N.E.2d 175, 181 (Ind.Ct.App.2006). The parent must be afforded the opportunity to be heard at a meaningful time and in a meaningful manner. Id. Due process in parental rights cases involves the balancing of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing government interest supporting the use of the challenged procedure. Id.
A parent's interest in the care, custody, and control of his or her children is a fundamental liberty interest; thus, the private interest involved is substantial. Id. The government's interest is also substantial, as the State of Indiana has a compelling interest in protecting the welfare of its children. Id. With regard to the factor of the risk of error created by the State's chosen procedures, Father argues that he had a right to be heard at the termination hearing and to receive services despite his incarceration. Procedural irregularities in CHINS proceedings may be so significant that they deprive a parent of procedural due process with respect to the termination of his parental rights. A.P. v. Porter County Office of Family & Children, 734 N.E.2d 1107, 1112-13 (Ind.Ct.App. 2000), trans. denied.
Father has been incarcerated throughout the CHINS proceedings, but *148 was appointed counsel to represent him in the CHINS and termination proceedings. At the termination pre trial hearing held on November 17, 2008, the juvenile court advised Father's counsel that a transport order would not be signed, but further advised, "[Father] can appear telephonically but ... you have to set that deal up and provide the Court with a phone number and kind of get with the facility so that they make him available." (Tr. 6.)[2]
There is no indication in the record that Father ever requested telephonic participation. Rather, he directed his attorney to request a continuation so that further discussions could take place regarding his possible post-adoption visitation with H.L. The request for a continuance was denied. However, Father has not shown that he was deprived of the opportunity to be heard at a meaningful time and in a meaningful manner. He simply did not avail himself of the opportunity offered to him.
Father also complains that DCS caseworker Michelle Anesu ("Anesu") did not contact him after he wrote to her to establish communication and that, in any event, he was unable to participate in services such as parental visitation and classes, because the county jails in which he had been incarcerated did not provide such services. The DCS is generally required to make reasonable efforts to preserve and reunify families during CHINS proceedings. Ind.Code § 31-34-21-5.5.[3]
However, Father has not shown that the DCS failed to make reasonable efforts toward family preservation. In a strict sense, the record supports Father's assertions that the DCS did not actively promote the development of his relationship with H.L., whom Father has apparently not met. Nevertheless, the absence of services was due to Father's incarceration and he does not point to any evidence that he specifically requested visitation or other services.
Anesu testified that Father had been incarcerated in Cass, Carroll, and White counties. To her knowledge, such county jails did not provide reunification services. Anesu had received a letter from Father, dated sometime in April of 2008, advising that he would be "released from Cass County" later that month. (Tr. 53.) However, Father had begun serving another sentence in November of 2008. Anesu did not know if Father had been released in the interim, only that he had not contacted Anesu to participate in services. As of the termination hearing, Father had been sentenced to four years imprisonment (with one and one-half years suspended) for Forgery and Theft committed in Carroll County and two years for Residential Entry committed in Cass County. Thus, the DCS was unable to offer services to Father or fully evaluate him to determine what services might have been needed. The inability to provide services in such circumstances does not amount to a denial of due process. See Castro v. State Office of Family and Children, 842 N.E.2d 367, 377 (Ind.Ct.App.2006), trans. denied.

II. Sufficiency of the Evidence

A. Standard of Review
This court will not set aside the trial court's judgment terminating a parent-child *149 relationship unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind.Ct.App.1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, this Court neither reweighs the evidence nor judges the credibility of the witnesses. Id. We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. Id.

B. Requirements for Involuntary Termination of Parental Rights
Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. Bester v. Lake County Office of Family & Children, 839 N.E.2d 143, 147 (Ind.2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. In re L.S., 717 N.E.2d 204, 208 (Ind.Ct.App.1999), trans. denied.
Indiana Code Section 31-35-2-4(b) sets out the elements that the DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:
(A) One (1) of the following exists:
(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
(ii) a court has entered a finding under IC XX-XX-XX-X.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
(iii) after July 1, 1999, the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;
(B) there is a reasonable probability that:
(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or
(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;
(C) termination is in the best interests of the child; and
(D) there is a satisfactory plan for the care and treatment of the child.
The trial court must subordinate the interests of a parent to those of the child when evaluating the circumstances surrounding the termination. In re A.A.C., 682 N.E.2d at 544. Termination of a parent-child relationship is proper where the child's emotional and physical development is threatened. Id. The trial court need not wait to terminate the parent-child relationship until the child is irreversibly harmed such that his or her physical, mental, and social development is permanently impaired. Id.

C. Analysis
Father challenges the trial court's determinations relating to Indiana Code Section 31-35-2-4(b)(2)(C) (best interests of the child). In determining what is in the best interests of the child, the trial court is required to look beyond the factors identified by the DCS and look to the totality of the evidence. In re A.B., 887 N.E.2d 158, 167 (Ind.Ct.App.2008).
*150 Father argues that it would be in H.L.'s best interests to have the opportunity to know her biological father. He directs our attention to a recent case in which our supreme court held that the involuntary termination of the parental rights of an incarcerated parent was not warranted. See In re G.Y., 904 N.E.2d 1257 (Ind.2009), reh'g denied. G.Y.'s mother, who was incarcerated due to offenses committed before the child's conception, appealed the termination of her parental rights, arguing that the State did not present clear and convincing evidence that termination of her parent-child relationship with G.Y. was in the child's best interests. See id. at 1261. Our supreme court agreed, observing that G.Y.'s mother had taken numerous steps to secure an earlier release date and provide for G.Y.'s care. Id. at 1263. She had completed a drug rehabilitation program and a parenting class, engaged in individualized drug counseling, was actively participating in an "inmate to work mate program," was pursuing an associate's degree, had secured a full-time job, and had arranged alternative sources of post-release housing, either through family members or a specific program. Id.
Here, in contrast, Father has not asserted that he is able to provide a home for H.L. at any time within the next several years. There is no evidence of record that Father is taking steps to further his education, acquire job skills, or secure employment to commence after his release from incarceration. There is no indication that Father has family members able or willing to assist him by providing care for H.L.
Moreover, H.L. requires extraordinary medical care and supervision in seclusion. Her foster mother testified that H.L. must be isolated from public contact; she remains at home with the exception of her visits to specialists at Riley Children's Hospital and St. Vincent Children's Hospital. Visitors to the home must also be strictly limited and then carefully screened for recent exposure to illnesses. H.L. requires twice-daily "breathing treatments." (Tr. 59.) She also has a feeding tube and a strict regimen of medications. H.L. must be regularly examined by a liver specialist, because her cystic fibrosis is "liver related." (Tr. 60). She also must regularly see a pulmonologist and a gastroenterologist. There is no evidence that Father has requested assistance with understanding or meeting H.L.'s extraordinary medical needs.
H.L.'s guardian ad litem, Millicent Hall ("Hall"), testified that she had visited with H.L. in her foster home and found that H.L. was "doing very well." (Tr. 68.) In Hall's opinion, adoption of H.L. by her foster parents was in H.L.'s best interests. Hall explained that H.L. "has a lot of medical needs that she has to go through a few times a day" and that her foster mother was very diligent in "administering those procedures" and "making sure that [H.L.'s] lungs are cleared out." (Tr. 69-70.)
Accordingly, the DCS presented clear and convincing evidence from which the juvenile court could conclude that termination of Father's parental rights was in the best interests of H.L.

Conclusion
Father has not shown that he was deprived of due process. The DCS established by clear and convincing evidence the requisite elements to support the termination of Father's parental rights.
Affirmed.
VAIDIK, J., and BRADFORD, J., concur.

ORDER
Appellee Indiana Department of Child Services, Local office in Marion County, by counsel, has filed a Motion to Publish.
*151 Having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS:
1. Appellee's Motion to Publish is GRANTED. This Court's opinion handed down in this cause in August 4, 2009, marked Memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.
BAILEY, VAIDIK, BRADFORD, JJ., concur.
NOTES
[1] She is not an active party to this appeal.
[2] The decision whether to permit an incarcerated parent to physically attend a termination hearing rests within the discretion of the trial court. In Re Involuntary Termination of Parental Rights of S.P.H., 806 N.E.2d 874, 879 (Ind.Ct.App.2004).
[3] We observe that the CHINS provision is not a requisite element of our parental rights termination statute, and a failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law. In re E.E., 736 N.E.2d 791, 796 (Ind.Ct.App.2000).