## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 19 2018, 10:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dorothy Ferguson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of A.F. (Minor Child),

M.F. (Father),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

February 19, 2018

Court of Appeals Case No.
48A02-1708-JT-1899

Appeal from the Madison Circuit Court

The Honorable G. George Pancol, Judge

Trial Court Cause No.
48C02-1610-JT-79

**Najam, Judge.**

# Statement of the Case

M.F. ("Father") appeals the trial court's termination of his parental rights over his minor child A.F. ("Child"). Father presents a single issue for our review, namely, whether the State presented sufficient evidence to support the termination of his parental rights. We affirm.

# Facts and Procedural History

On January 22, 2009, Child was born to Father and M.M.F. ("Mother"). In October 2013, Child was living with Mother and two half-siblings when Mother contacted the Department of Child Services ("DCS") to report that she was homeless and could not provide for the children. Mother asked that DCS take all three children and place them in foster care. Father was incarcerated at that time. Accordingly, on October 7, DCS filed a petition alleging that Child was a child in need of services ("CHINS"). During the pendency of the CHINS proceedings, Father remained incarcerated and did not maintain contact with either DCS or Child, and Mother failed to fully comply with services. On November 3, 2016, DCS filed a petition to terminate their parental rights over Child.

Following a hearing, the trial court granted the termination petition on July 6, 2017. In support of its order, the trial court entered the following findings and conclusions:

> 4.) A[n] initial hearing was held for Father on November 6, 2013, [F]ather appeared, was appointed counsel to represent him and Father admitted the [C]hild needed services.

5.) On November 6, 2013, the court also conducted a dispositional hearing. The parents were ordered to complete recommended services that would alleviate the CHINS condition.

6.) Mother progressed to a trial home visit with the [C]hild and siblings that began approximately in March and ended July 8, 2015. The [C]hild and her siblings were removed again from Mother in July 8, 2015. Mother again needed resources to help her with the [C]hild and the [C]hild's siblings.

7.) Since July 8, 2015, when the trial home visit was terminated, Mother has not completed any additional services, contacted the department, and Mother has not visited with the [C]hild on a consistent basis. Mother's last visit with the [C]hild was August 6, 2016.

8.) The night before the termination hearing, Mother advised the family case manager and her attorney that she consented to the adoption of the [C]hild to the current placement.

* * *

10.) The current family case manager [("FCM")], Misty Karnes, received the case in January of 2016. FCM Karnes stated that she has had limited contact with [M]other and that [M]other did not contact her to schedule visitations with the [C]hild, nor make arrangements to resume services and/or begin additional services. Recently, FCM Karnes did speak to Mother about Mother's current ability to have the [C]hild and the [C]hild's sibling. Mother told FCM Karnes that her current housing was inadequate for the [C]hild and the [C]hild's sibling.

11.) Throughout the underlying CHINS proceeding, [F]ather has had no meaningful participation in services, has not complied with services or the court's dispositional orders, and has had no meaningful or consistent visitation or interaction with the

[C]hild, from the beginning of the CHINS matter through to the date of the termination trial on the termination petition. Father is incarcerated at the Indiana Department of Correction[] for attempted murder. Father is serving a sentence that has a projected release date of 2040. Father attended a portion of the hearing, but had to leave the hearing when the department of correction[] said he could not stay on the phone. The court finds that Father was given an opportunity to participate in the hearing, but could not stay for the entirety of the hearing.

12.) CASA volunteers testified that the [C]hild is thriving in the current pre-adoptive placement. The [C]hild is placed with his two half[-]siblings. The [C]hild is bonded with h[er] half-siblings and current foster mother. The foster mother has been the placement for the [C]hild since July 8, 2015. CASA volunteers testified that it is in the [C]hild's best interest to have the parent-child relationship be terminat[ed].

13.) During the trial, Father stated, through counsel, that he wanted a family member [to] take the [C]hild and have placement of the [C]hild because he wanted the [C]hild to remain with his family.

14.) Father was incarcerated when the [C]hild was removed from Mother. Mother could not provide for the [C]hild and the [C]hild's sibling[s] and the [C]hild and [C]hild's siblings were removed from her care. Mother could not complete services and enhance her ability to parent the [C]hild and the [C]hild's siblings.

15.) At the time of the hearing, Mother failed to appear for the trial. Mother told her attorney and family case manager that Mother could not provide for the [C]hild and the [C]hild's sibling[s]. Father remains in the custody of the Indiana Department of Correction[].

16.) The foster placement testified that she wants to adopt the [C]hild. She has had the [C]hild since 2013, when the [C]hild was removed and was the placement for the [C]hild when the trial home visit failed in July of 2015. The [C]hild is very bonded to the current pre-adoptive foster parent. The [C]hild is thriving in her current foster care placement.

17.) The Family Case Manager and CASA believe it would be in the best interest of the [C]hild for the Court to grant the Petition and to terminate the parent-child relationship[s]. This is due to the [F]ather's lack of participation and engagement in any reunification efforts and [M]other's lack of participation or engagement in reunification efforts and in the [C]hild's life, and also due to the satisfactory plan for permanency for the [C]hild, that being adoption by current foster care placement.

18.) The Court finds these opinions to be accurate and adopts [them] as its own for purposes of these proceedings. There is a satisfactory plan for the permanency of the [C]hild, that being adoption by current foster care placement. The [C]hild is placed with the [C]hild's siblings. . . .

CONCLUSIONS OF LAW

* * *

6.) There is a reasonable probability that the continuation of the parent-child relationship between the [F]ather and [M]other of [C]hild poses a threat to the well-being of the [C]hild.

7.) There is a reasonable probability that the conditions that resulted in the [C]hild's removal from and continued placement outside the care and custody of the [F]ather and the [M]other will not be remedied.

8.) Termination of the parent-child relationship between the [F]ather and [M]other and the minor child is in the best interests of the [C]hild.

9.) The plan of DCS for the care and treatment of the [C]hild, that being adoption of the [C]hild by current pre-adoptive foster care placement, is acceptable and satisfactory.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED by the Court that the parent-child relationship[s] between the [F]ather and [M]other[ and Child are] hereby permanently terminated[.]

Appellant's App. Vol. II at 9-11. This belated appeal ensued.[1]

# Discussion and Decision

[4] We begin our review of this appeal by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Fam. & Child. (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cty. Off. of Fam. & Child. (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely

---

[1] Mother, having consented to the adoption of Child, does not participate in this appeal.

because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[5] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove:

> (B) that one (1) of the following is true:
>
>> (i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> * * *
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[6] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cty. Off. of*

*Fam. & Child. (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cty. Off. of Fam. & Child. (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[7] Here, in terminating Father's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Off. of Fam. & Child.*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

## *Finding No. 11*

[8] On appeal, Father contends, broadly, that "the findings that were made were insufficient and not supported by the evidence." Appellant's Br. at 9. But he challenges only one of the trial court's findings, Finding No. 11, which states as follows:

Throughout the underlying CHINS proceeding, [F]ather has had no meaningful participation in services, has not complied with services or the court's dispositional orders, and has had no meaningful or consistent visitation or interaction with the [C]hild, from the beginning of the CHINS matter through to the date of the termination trial on the termination petition. Father is incarcerated at the Indiana Department of Correction[] for attempted murder. Father is serving a sentence that has a projected release date of 2040. Father attended a portion of the hearing, but had to leave the hearing when the department of correction[] said he could not stay on the phone. The court finds that Father was given an opportunity to participate in the hearing, but could not stay for the entirety of the hearing.

Appellant's App. Vol. II at 9-10.

[9] In support of his contention that the evidence does not support that finding, Father asserts that: he was "never afforded an opportunity to be heard on services he participated in while incarcerated"; the "documentary evidence is void as to [Father's] exact out date"; and the record is "void of any effort by DCS to ensure the relationship between the child and her father or her father's family was preserved." Appellant's Br. at 9-10. We address each contention in turn.

*Opportunity to be Heard*

[10] To the extent Father claims that the trial court violated his right to due process when it did not continue the hearing after he "had to exit the telephone"

because of "difficulty breathing,"[2] Father does not make cogent argument in support of that contention, and it is waived. *Id.* at 9. Waiver notwithstanding, our Supreme Court has held that whether or not an incarcerated parent is even *permitted* to attend a termination of parental rights hearing is within the sound discretion of the trial court judge. *See Z.G. v. Ind. Dep't of Child Servs. (In re C.G.)*, 954 N.E.2d 910, 922 (Ind. 2011). And, in *D.B. v. Marion County Department of Child Services (In re C.T.)*, 896 N.E.2d 571, 587-88 (Ind. Ct. App. 2008), *trans. denied*, we held that the trial court did not abuse its discretion or violate the incarcerated father's right to due process when it denied his motion to continue the termination hearing, where the child had been removed from the father for more than one year, father's out date was four months away, and the father was represented by counsel at the hearing. Here, Child had been placed with her foster parent for more than three years at the time of the termination hearing, Father had been incarcerated during the entire CHINS proceedings, Father's outdate is 2040, and Father was represented by counsel at the final hearing. We hold that the trial court did not abuse its discretion or violate Father's right to due process when it did not continue the hearing after his departure.[3]

---

[2] A Department of Correction employee informed the trial court that Father "had to leave the hearing" because he was "very upset and his breathing was very difficult." Tr. at 60. Father does not provide this court with any additional details, such as the severity of the breathing problem and why he was not able to recover and rejoin the hearing.

[3] To the extent Father contends that he was denied the opportunity to testify regarding services he participated in while incarcerated, we note that Father's brief on appeal does not include any information about such services.

*Father's Out Date*

The undisputed evidence shows that Father's expected out date is 2040. Father does not direct us to any evidence in the record to show that he "could have been afforded time cuts for completing services." Appellant's Br. at 9. Father's contention on this issue is without merit.

*Relationships Between Child and Father and Father's Family*

Father asserts that DCS was required to: maintain contact with him; "ensure the relationship between [Child] and [Father] or [F]ather's family was preserved"; and seek out and identify "suitable and willing relatives" with which to place Child rather than placing her with a stranger. Appellant's Br. at 11. First, in the initial dispositional order in the CHINS proceedings, the trial court ordered Father to "maintain weekly contact with the Family Case Manager by visitation, phone call, email, or correspondence." Appellant's App. Vol. II at 71. Thus, Father's contention that DCS was required to maintain contact with him is without merit. Second, to the extent Father contends that DCS did not do enough to preserve Child's relationship with him and Father's family, while DCS is "generally required to make reasonable efforts to preserve and reunify families during CHINS proceedings," I.C. § 31-34-21-5.5, the record shows that "the absence of services was due to Father's incarceration[,] and he does not point to any evidence that he specifically requested visitation or other services." *See A.Z. v. Marion Cty. Off. of Family and Children (In re H.L.)*, 915 N.E.2d 145, 148 (Ind. Ct. App. 2009). And this court

has held that "a failure to provide services . . . does not serve as a basis on which to directly attack a termination order as contrary to law." *C.E. v. Marion Cty. Off. of Family and Children (In re E.E.)*, 736 N.E.2d 791, 796 (Ind. Ct. App. 2000).

[13] Third, Father maintains that Indiana Code Section 31-34-4-2, which requires DCS to "consider placing a child" with a "suitable and willing relative," also requires DCS to seek out and identify such relatives. We hold that the statute does not put that burden on DCS but, rather, if DCS is made aware of a willing relative, it must consider such placement. Here, the record is clear that Father participated in the CHINS hearings but never stated his desire that Child be placed with a relative. And Father did not notify his mother about the termination proceedings until one day before the final hearing. In any event, Child has been placed with her half-siblings for more than three years, and Father has not demonstrated that another placement is in Child's best interests. Father has not demonstrated error on this issue.

### Conditions that Resulted in Child's Removal will not be Remedied

[14] Father's sole contention with regard to the trial court's conclusions is that "the evidence is not clear if the placement outside of the home of the parents will not be remedied." Appellant's Br. at 9. In determining whether the evidence supports the trial court's conclusion that Father is unlikely to remedy the reasons for Child's removal, we engage in a two-step analysis. *E.M. v. Ind. Dep't of Child Servs. (In re E.M.)*, 4 N.E.3d 636, 643 (Ind. 2014). "First, we identify the conditions that led to removal; and second, we determine whether there is a

reasonable probability that those conditions will not be remedied." *Id.* (quotations and citations omitted). In the second step, the trial court must judge a parent's fitness to care for his children at the time of the termination hearing, taking into consideration evidence of changed conditions. *Id.* However, the court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Moore v. Jasper Cty. Dep't of Child Servs.*, 894 N.E.2d 218, 226 (Ind. Ct. App. 2008) (quotations and citations omitted). Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* Moreover, DCS is not required to rule out all possibilities of change; rather, it need establish only that there is a reasonable probability the parent's behavior will not change. *Id.*

[15] We cannot say that the trial court clearly erred when it concluded from its findings that the conditions that resulted in Child's removal will not be remedied. Child was removed from Mother's care due to Mother's homelessness and inability to care for Child. The undisputed evidence shows that Mother continues to be unable to care for Child and has consented to her adoption. Father remains incarcerated. There is no evidence that Father contacted DCS to inquire about services, that he participated in services while incarcerated, or that he or his family members attempted to maintain a relationship with Child. Moreover, the undisputed evidence shows that Father's expected out date for his attempted murder conviction is 2040, when

Child will be thirty-one years old. Father's arguments on appeal simply seek to have this court disregard the evidence most favorable to the trial court's judgment and instead reweigh the evidence in his favor, which we cannot do. We cannot say that the trial court clearly erred when it concluded that the conditions that resulted in Child's removal will not be remedied.

## *Conclusion*

[16] Father has not demonstrated that the evidence is insufficient to support the trial court's findings or that the findings are insufficient to support the termination of his parental rights. Child needs permanency. The two court appointed special advocates and the family case manager each testified that it was in Child's best interests to terminate Father's parental rights and have Child adopted. It is notable that Father does not allege or direct us to any evidence of efforts he made to maintain a relationship with Child during his incarceration, such as letters or phone calls. The totality of the evidence, including Father's historical inability to provide a safe and stable home and his incarceration until 2040, supports the trial court's conclusion that termination of Father's parental rights is in Child's best interest.

[17] Affirmed.

Mathias, J., and Barnes, J., concur.