## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 09 2019, 8:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John R. Worman
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Robert J. Henke
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Termination of the Parent-Child Relationship of L.L. (Minor Child) and J.L. (Mother), *Appellant-Respondent,* <br><br> v. <br><br> Indiana Department of Child Services, *Appellee-Petitioner.* | October 9, 2019 <br><br> Court of Appeals Case No. 19A-JT-891 <br><br> Appeal from the Vanderburgh Superior Court <br><br> The Honorable Brett J. Niemeier, Judge <br><br> Trial Court Cause No. 82D04-1811-JT-2122 |

**Mathias, Judge.**

The Vanderburgh Superior Court terminated J.L.'s ("Mother") parental rights to her minor child. Mother appeals and raises two issues, which we restate as:

I. Whether the Indiana Department of Child Service's ("DCS")'s failure to provide Mother with a mental health referral violated her due process rights; and,

II. Whether the trial court's order terminating her parental rights is supported by clear and convincing evidence.

We affirm.

## Facts and Procedural History

L.L. was born on January 14, 2013.[1] Shortly thereafter, L.L. was removed from Mother's care because she had used methamphetamine. L.L. was returned to Mother's care in May 2014 after Mother completed court-ordered services.[2]

In April 2016, DCS removed L.L. from Mother's home for a second time because she was using methamphetamine and was in possession of non-prescribed substances. Paraphernalia, methamphetamine, and pills were found within three-year-old L.L.'s reach, near his toys.

---

[1] L.L.'s biological father's parental rights were terminated in a separate cause.

[2] However, Mother was unsatisfactorily discharged from Drug Court because she forged her attendance at AA/NA meetings.

[5]     On April 29, 2016, DCS filed a petition alleging that L.L. was a Child in Need of Services ("CHINS"). L.L. was adjudicated a CHINS on May 11, 2016. Mother was ordered to abstain from use of drugs and alcohol, undergo substance abuse and mental health evaluations, submit to random drug screens, participate in supervised or monitored visitations, and remain in contact with the family case manager.

[6]     On the same date that the CHINS petition was filed, Mother was charged with Level 6 felony neglect of a dependent, Level 6 felony maintaining a common nuisance, Level 6 felony possession of methamphetamine, two counts of Class A misdemeanor possession of a controlled substance, and Class C misdemeanor possession of paraphernalia. After the State agreed to reduce the felony charges to misdemeanors, Mother pleaded guilty to all charges and was ordered to serve eighteen months in the Drug Abuse Probation Services Program.

[7]     Mother was not compliant with the conditions of that program, and three petitions to revoke were filed by her probation officer due to non-compliance. The first, filed in January 2017, was due to Mother's failure to submit to a drug screen and failure to participate in substance abuse treatment. The second, filed in February 2017, was due to her failure to submit to a drug screen and pay probation fees. The third, filed in March 2017, was due to a positive test for methamphetamine. Mother was unsatisfactorily discharged from the program after the third violation.

[8] Mother also failed to comply with court-ordered services in the CHINS proceedings, including failure to submit to drug screens. As a result, during the CHINS proceedings, two verified informations for rule to show cause were filed against Mother.

[9] After the first rule to show cause was filed in the fall of 2016, Mother's compliance with services briefly improved, including her participation in drug rehabilitation services. Therefore, L.L. was returned to Mother's care for a temporary trial home visit on December 20, 2016. Approximately two weeks later, the child was removed from Mother's care because she stopped participating in random drug screens, and she was taken into custody by law enforcement after the first petition to revoke was filed in her criminal case.

[10] Mother resides with her fiancé, who has a history of manufacturing, possessing, and using methamphetamine. Mother admitted to using methamphetamine with her fiancé. Mother's fiancé was ordered to participate in services, but he "participated only minimally in the case." Appellant's App. p. 15. Her fiancé "has not been supportive of Mother pursuing reunification with [L.L.]" *Id*.

[11] Mother lived with her father, L.L.'s grandfather, before she moved in with her fiancé. Her father also uses methamphetamine, and Mother admitted to using with her father. And Mother admitted delivering methamphetamine to her father. *Id.* at 17.

[12] Mother agrees that children require a sober caregiver, yet she failed to maintain her own sobriety throughout the CHINS and termination proceedings. Mother

admitted to using methamphetamine in March 2017 but denied any other use. However, she tested positive for methamphetamine in July 2017, October 2018, and December 2018.

[13] Mother completed substance abuse treatment on July 5, 2017, but continued to use methamphetamine. Mother refused to participate in additional treatment that was offered to her. She tested positive for alcohol use even though she was also ordered not to consume alcohol. Mother also missed approximately half of the drug screens offered by her family case managers. Mother admits that she is an addict and uses methamphetamine because she is depressed.

[14] Mother participated in visitation with L.L., and the visitation reports were generally positive. However, she was frequently late to visitation and missed visitation while she was incarcerated for the three probation violations. Each time visitation progressed beyond supervised visitation, Mother would miss a drug screen or test positive for methamphetamine resulting in a return to supervised visitation for Mother and L.L.

[15] Mother is unemployed and relies on her fiancé for financial support. Mother has not expressed any inclination or interest in maintaining an independent source of income for herself or her child. Mother's continued stability is dependent on her fiancé who is also a methamphetamine addict.

[16] DCS filed a petition to terminate Mother's parental rights on November 19, 2018. On January 2, 2019, before the scheduled fact-finding hearing, the family case manager made a scheduled visit to Mother's home. The home was not

suitable for a child. Empty beer bottles were lying in the backyard. Boxes blocked the front door and access to other rooms leaving only a small path between the living room and kitchen. Because the home's bedrooms were unsuitable, Mother and her fiancé were using the living room as a bedroom.

[17] The fact-finding hearing was held on February 14, 2019. The trial court concluded that Mother's continuing methamphetamine use and risk of relapse is "very high, given Mother's past performance." Appellant's App. p. 21. In addition, the trial court found:

> 26. Mother's absolute lack of participation to demonstrate her sobriety and stability in order to regain custody of the child leaves the Court without a doubt that Mother is unwilling and unable to fulfill her parental obligations to the child.
>
> 27. Overall, Mother has failed to remedy the situation that brought about the removal of the [child]. Based on the pattern of behaviors and continuing pattern of substance abuse by Mother, the Court finds that there is not a reasonable probability the situation which brought about the removal of the child is likely to be remedied. The Court finds that Mother's past behavior is the best predictor of her future behavior.

*Id.* The court also concluded that continuation of the parent-child relationship poses a threat to L.L.'s wellbeing because of Mother's continued drug use. And, L.L. "has already suffered years without being with his Mother due to [] Mother's drug usage. The emotional and mental health issues associated with this lack of stability can have lifelong significance." *Id.* at 22. The court also concluded that termination of Mother's parental rights was in L.L.'s best interest.

Mother now appeals the trial court's order termination her parental rights to her minor child, L.L.

## *I. Due Process*

First, Mother argues that she was denied due process because DCS failed to provide a referral for mental health treatment. She argues the services were necessary, and therefore, DCS was required to request dismissal of its petition to terminate her parental rights pursuant to Indiana Code section 31-35-2-4.5(d)(3). It is well-settled that when the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process. *Hite v. Vanderburgh Cty. Office of Family & Children*, 845 N.E.2d 175, 181 (Ind. Ct. App. 2006).

In pertinent part, Indiana Code section 31-35-2-4.5(d)(3) provides:

> (d) A person described in section 4(a) of this chapter **may** file a motion to dismiss the petition to terminate the parent-child relationship if any of the following circumstances apply: . . .
>
> > (3) That:
> >
> > > (A) IC 31-34-21-5.6 is not applicable to the child;
> > >
> > > (B) the department has not provided family services to the child, parent, or family of the child, in accordance with applicable provisions of a currently effective case plan prepared under IC 31-34-15 or IC 31-37-19-1.5, or a permanency plan or dispositional decree approved under IC 31-34 or IC 31-37; and
> > >
> > > (C) the services that the department has not provided are substantial and material in relation to

> implementation of a plan to permit safe return of the child to the child's home.
>
> ***
>
> The motion to dismiss shall specify which of the allegations described in subdivisions (1) through (4) apply to the motion. If the court finds that any of the allegations described in subdivisions (1) through (4) are true, as established by a preponderance of the evidence, the court shall dismiss the petition to terminate the parent-child relationship. In determining whether to dismiss a petition to terminate a parent-child relationship pursuant to a motion to dismiss that specifies allegations described in subdivision (4), the court may consider the length of time remaining in the incarcerated parent's sentence and any other factor the court considers relevant.

(Emphasis added).

[21] DCS observes that, under the plain language of the statute, it is not statutorily obligated to move to dismiss a termination petition, and further, that it had provided Mother with reasonable efforts to reunify with L.L before it filed its petition to terminate Mother's parental rights.[3] DCS observes that in "'seeking termination of parental rights,'" DCS has no obligation "'to plead and prove that services have been offered to the parent to assist in fulfilling parental obligations.'" *In re J.W., Jr.*, 27 N.E.3d 1185, 1190 (Ind. Ct. App. 2015)

---

[3] Mother argues that Indiana Code section 31-35-2-4.5(d) **requires** DCS to state in the petition for involuntary termination of parental rights whether one of the section (d) factors applies as a basis for filing a motion to dismiss the petition. However, in 2012, the statute was amended to be permissive rather than mandatory. *See D.H. v, Ind. Dep't of Child Servs.*, 122 N.E.3d 832, 833 (Ind. Ct. App. 2019), *trans. denied.*

(quoting *S.E.S. v. Grant Cty. Dep't of Welfare*, 594 N.E.2d 447, 448 (Ind. 1992)), *trans. denied*. Likewise, although DCS "'is generally required to make reasonable efforts to preserve and reunify families during the CHINS proceedings,'" that requirement under our CHINS statutes "'is not a requisite element of our parental rights termination statute, and a failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law.'" *Id.* (quoting *A.Z. v. Ind. Dep't of Child Servs.*, 915 N.E.2d 145, 148 & n.3 (Ind. Ct. App. 2009)).

[22] Furthermore, DCS provided Mother with services throughout the CHINS and termination proceedings, but her participation was inconsistent. Mother initially completed substance abuse treatment but refused to continue with treatment after she tested positive for methamphetamine in July 2017. She also missed almost half of the random drug screens that DCS provided. DCS made a referral for a mental health evaluation, but Mother did not follow through with the resulting recommendation to participate in individual therapy.[4] Tr. pp. 78–79. Mother was resistant to both substance abuse treatment and mental health treatment.[5] Tr. pp. 82–84. DCS provided Mother with supervised and

---

[4] Mother challenges the trial court's finding concerning her failure to obtain mental health treatment. We agree with Mother that her family case manager did not provide her with a referral for individual therapy. However, when Mother and the case manager discussed individual therapy, Mother was resistant and indicated that she was not willing to undergo mental health treatment. Tr. pp. 82-84. To the extent the trial court's finding implies that Mother received a referral for individual mental health treatment, we agree that is not supported by the evidence. But this error does not require reversal of the trial court's order.

[5] Mother admits that the case managers encouraged her to seek treatment and provided her with information if she decided to seek treatment on her own. Appellant's Br. at 16.

monitored visitation and a parenting aide. Mother utilized those offered services.

[23] For all of these reasons, we conclude that DCS provided Mother with reasonable efforts to reunify with L.L. and that its failure to provide her with a referral for individual therapy does not equate with a denial of due process.

## II.  Sufficient Evidence

[24] Mother also argues that the evidence is insufficient to support the termination of her parental rights to L.L. The controlling statute provides that a petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
> > (i)   There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[25] DCS must prove each element by clear and convincing evidence. Ind. Code § 31-37-14-2; *In re G.Y.*, 904 N.E.2d 1257, 1260 (Ind. 2009). Because Indiana

Code section 4(b)(2)(B) is written in the disjunctive, the trial court is required to find that only one prong has been established by clear and convincing evidence. *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010). Clear and convincing evidence need not establish that the continued custody of the parent is wholly inadequate for the child's very survival. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005). It is instead sufficient to show by clear and convincing evidence that the child's emotional and physical development are put at risk by the parent's custody. *Id.* If the court finds the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[26] We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility, and we consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* Clear error is that which leaves us with a definite and firm conviction that a mistake has been made. *J.M. v. Marion Cty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

[27] We have also often noted that the purpose of terminating parental rights is not to punish parents but to protect their children. *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004). Although parental rights have a constitutional dimension,

the law allows for their termination when clear and convincing evidence establishes that they are unable or unwilling to meet their responsibilities as parents. *Id.* Thus, parental interests must be subordinated to the children's interests in determining the proper disposition of a petition to terminate parental rights. *G.Y.*, 904 N.E.2d at 1259.

[28] Mother argues that DCS failed to present clear and convincing evidence to prove both prongs of Indiana Code section 31-35-2-4(b)(2)(B). Because that section is written in the disjunctive, we need only address Mother's argument that the DCS did not prove continuation of the parent-child relationship poses a threat to L.L.'s well-being.

[29] Importantly, a trial court "need not wait until a child is irreversibly influenced by a deficient lifestyle such that [his or] her physical, mental, and social growth is permanently impaired before terminating the parent-child relationship." *K.E. v. Ind. Dep't of Child Servs.*, 39 N.E.3d 641, 649 (Ind. 2015) (citation omitted). "In determining whether the continuation of a parent-child relationship poses a threat to the child[], a trial court should consider a parent's habitual pattern of conduct to determine whether there is a substantial probability of future neglect or deprivation." *In re A.P.*, 981 N.E.2d 75, 81 (Ind. Ct. App. 2012).

[30] First, we acknowledge that Mother and L.L. are bonded. And the visitation reports were generally positive. Mother and L.L. enjoyed spending time together, and it is evident that Mother loves her child. But Mother has struggled with substance abuse addiction, and in particular methamphetamine use, for

several years. She tested positive for methamphetamine throughout the CHINS proceedings and after the petition to terminate her parental rights was filed. Mother relies on her fiancé for financial support and is not employed. Her fiancé is also a methamphetamine addict. Mother admitted that her fiancé manufactures, possesses, and uses methamphetamine. On the date of the fact-finding hearing, he was on probation for possession of methamphetamine. And Mother's fiancé is not supportive of Mother reunifying with L.L.

[31] Because of Mother's inconsistent participation in services, refusal to participate in substance abuse treatment,[6] missed and failed drug screens, incarceration at various times during these proceedings, and her lack of stability, L.L. has not been placed in Mother's care for most of his life. L.L. requires stability that Mother is not able to provide.

[32] For all of these reasons, we conclude that clear and convincing evidence supports the trial court's conclusion that continuation of the parent-child relationship poses a threat to L.L.'s well-being.

[33] Mother also argues that termination of her parental rights was not in L.L.'s best interest.

> [I]n determining what is in the best interests of a child, the trial
> court is required to look beyond the factors identified by [DCS]

---

[6] We agree with Mother's argument that the trial court's finding concerning the effectiveness of narcotics anonymous programs is not supported by the evidence. *See* Appellant's Br. at 22. But the trial court's finding that Mother refused to participate in substance abuse treatment is supported by clear and convincing evidence.

and to consider the totality of the evidence. In so doing, the trial court must subordinate the interests of the parent to those of the child. The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. Moreover, we have previously held that the recommendations of the case manager and court-appointed advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests.

*In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009) (citations omitted).

[34] Mother acknowledges that L.L. is thriving in a loving, pre-adoptive home, but argues that her rights should not be terminated simply because L.L.'s foster home is a "better place to live." Appellant's Br. at 28. The family case manager and court-appointed special advocate both testified that termination of Mother's parental rights was in L.L.'s best interest. Tr. pp. 99, 110–11. Throughout the CHINS and termination proceedings, Mother refused to address her substance abuse issues and has continued to use methamphetamine. L.L. needs a stable, drug-free home. Mother has not demonstrated that she has the ability to support herself, but instead relies on her fiancé to support her. Moreover, her fiancé is also a methamphetamine addict who, by Mother's own admission, is not supportive of Mother's reunification with L.L.

[35] For all of these reasons, we conclude that DCS presented clear and convincing evidence that termination of Mother's parental rights was in L.L.'s best interest.

# Conclusion

[36] Mother's due process rights were not violated when DCS failed to provide her with a referral for individual therapy. And clear and convincing evidence supports the trial court's order terminating her parental rights.

[37] Affirmed.


Robb, J., and Pyle, J., concur.