# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 28 2019, 7:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anna Onaitis Holden
Zionsville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of N.F. (Minor Child);

S.F. (Father),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner,*

and

Child Advocates, Inc.,

October 28, 2019

Court of Appeals Case No.
19A-JT-770

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Scott Stowers, Magistrate

Trial Court Cause No.
49D09-1809-JT-1083



*Appellee-Guardian Ad Litem.*

**Najam, Judge.**

## Statement of the Case

S.F. ("Father") appeals the trial court's termination of his parental rights over his minor child N.F. ("Child"). Father presents a single issue for our review, namely, whether the Indiana Department of Child Services ("DCS") deprived him of his right to due process when it failed to make reasonable efforts to reunify Father with Child. We affirm.

## Facts and Procedural History

On January 23, 2005, Child was born to Father and S.J. ("Mother"). Father has a lengthy criminal history, and he has been incarcerated for approximately seven of the past ten years. In 2015, a juvenile court found that Child was a Child in Need of Services ("CHINS") after substantiating "allegations of abuse and neglect," and the court granted wardship of Child to DCS. Appellant's App. Vol. 2 at 52. Following convictions for five counts of "Felon in Possession of a Firearm" in a federal court, in March 2017, Father was

sentenced to an aggregate term of eighty months in a Kentucky prison. *Id.* at 53. Father's expected out date is July 24, 2020. Father also has a pending "arrest warrant out of Marion County Indiana." *Id.*

[3] In December 2015, the juvenile court changed the permanency plan from reunification to adoption, and the court terminated Mother's parental rights over Child. It was not until September 13, 2018, that DCS filed its petition to terminate Father's parental rights over Child. Following a final fact-finding hearing, the court granted DCS' petition. In its findings and conclusions, the court stated in part as follows:

> 20.    [Father] has not seen the child in approximately a year and a half.
>
> * * *
>
> 33.    [Father] last had telephone contact with [Child] in December 2018 or January 2019.
>
> 34.    Following that telephone contact with his father, [Child] became withdrawn, upset, and depressed.
>
> 35.    [Father] has been incarcerated for the majority of [Child]'s life.
>
> 36.    [Father] has not had a meaningful role in [Child]'s life and is not bonded with the child.

*Id.* at 53-54. The court also found that Child is "comfortable" and "feels loved" in his pre-adoptive foster home, where he had lived for fourteen months as of the final hearing. *Id.* at 54. This appeal ensued.

# Discussion and Decision

[4] Father contends that DCS "made no efforts, let alone statutorily-required reasonable efforts, to reunify S.F. with his son. [DCS'] failure to follow the statutory requirements violated Father's right to procedural due process." Appellant's Br. at 14. In particular, Father states that "a parent's right to DCS' reasonable efforts to reunify a family is codified at Indiana Code Section 31-34-21-5.5."[1] *Id.* at 15. While Father acknowledges the "challenge" to DCS in providing services to Father while he is incarcerated, he finds "troubling" DCS' failure to "find a way to fulfill its statutory duty to provide reasonable efforts." *Id.* at 16. Father does not challenge the sufficiency of the evidence to support the termination order.

[5] We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Fam. & Child. (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cty. Off. of Fam. & Child. (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001).

---

[1] Indiana Code Section 31-34-21-5.5 provides in relevant part that DCS "shall make reasonable efforts to preserve and reunify families as follows: . . . to make it possible for the child to return safely to the child's home as soon as possible."

As this Court has explained,

> [w]hen the State seeks the termination of a parent-child
> relationship, it must do so in a manner that meets the
> requirements of the Due Process Clause. *Hite v. Vanderburgh*
> *County Office of Family and Children*, 845 N.E.2d 175, 181 (Ind. Ct.
> App. 2006). The parent must be afforded the opportunity to be
> heard at a meaningful time and in a meaningful manner. *Id.*
> Due process in parental rights cases involves the balancing of
> three factors: (1) the private interests affected by the proceeding;
> (2) the risk of error created by the State's chosen procedure; and
> (3) the countervailing government interest supporting the use of
> the challenged procedure. *Id.*
>
> A parent's interest in the care, custody, and control of his or her
> children is a fundamental liberty interest; thus, the private
> interest involved is substantial. *Id.* The government's interest is
> also substantial, as the State of Indiana has a compelling interest
> in protecting the welfare of its children. *Id.*

*A.Z. v. Ind. Dep't of Child Servs. (In re H.L.)*, 915 N.E.2d 145, 147 (Ind. Ct. App.
2009).

In *In re H.L.*, we addressed the father's contention that he had a right "to receive
services despite his incarceration" and that he was denied due process when
DCS did not provide services. *Id.* Father was incarcerated "throughout the
CHINS proceedings" and, on appeal from the termination of his parental
rights, he alleged that he "was unable to participate in services," which were not
provided at the county jails where he was incarcerated. *Id.* at 148. We
reiterated that "DCS is generally required to make reasonable efforts to preserve

and reunify families during CHINS proceedings" pursuant to Indiana Code Section 31-34-21-5.5. *Id.* But we held as follows:

> Father has not shown that the DCS failed to make reasonable efforts toward family preservation. In a strict sense, the record supports Father's assertions that the DCS did not actively promote the development of his relationship with H.L., whom Father has apparently not met. Nevertheless, the absence of services was due to Father's incarceration and he does not point to any evidence that he specifically requested visitation or other services.
>
> * * *
>
> As of the termination hearing, Father had been sentenced to four years imprisonment (with one and one-half years suspended) for Forgery and Theft committed in Carroll County and two years for Residential Entry committed in Cass County. Thus, the DCS was unable to offer services to Father or fully evaluate him to determine what services might have been needed. *The inability to provide services in such circumstances does not amount to a denial of due process. See Castro v. State Office of Family and Children*, 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied*.

*Id.* (emphasis added).

[8]    Likewise, here, Father blames DCS for its failure to facilitate contact between Father and Child in an effort at reunification. But Father does not direct us to any evidence that he had made any effort to contact Child after their last phone call in December 2018 or January 2019 or after their last visit more than one year prior to the final hearing. And Father does not direct us to any evidence that he sought help from DCS or other sources in finding appropriate services

that might have been available to him in prison. Moreover, as DCS points out, once the juvenile court changed the permanency plan from reunification to adoption in December of 2015, DCS was not thereafter required to provide services to Father towards reunification. *Wedding v. Dep't of Child Servs. of Vanderburgh Cty. (In re A.D.W.)*, 907 N.E.2d 533, 538 (Ind. Ct. App. 2008) (citing I.C. § 31-34-21-5.8). We hold that Father was not denied his right to due process as the result of DCS' inability to provide Father with services while incarcerated. *See id.*

[9] Affirmed.

Bailey, J., and May, J., concur.